No. 60,658

James L. Summers, *Appellant,* v. Montgomery Elevator Company; Oak Park Investment Company, a Kansas General Partnership, *et al.;* and Lerner Shops, Inc., D/B/A Lerner Shop, *Appellees.*

(757 P.2d 1255)

Opinion filed June 24, 1988.

*Thomas Francis Sullivan,* of Mission Woods, argued the cause and was on the brief for appellant.

*Kevin Bennett,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause and *Frank Saunders, Jr.,* of the same firm, was with him on the brief for appellee Montgomery Elevator Company.

*James E. Kelley,* of Kansas City, Missouri, argued the cause, and *Elizabeth M. Drill,* of Brown, Koralchik & Fingersh, of Overland Park, was on the brief for appellee Oak Park Investment Company.

*Ronald W. Nelson,* of Law Office of Ronald W. Nelson, of Overland Park, argued the cause and was on the brief for appellee Lerner Shop.

The opinion of the court was delivered by

HERD, J.: This is a personal injury action wherein plaintiff James Summers appeals an adverse jury verdict.

Summers is an employee of Graves Truck Line and as such made regular deliveries to Lerner Shops, Inc., located in Oak Park Mall in Overland Park. The deliveries were made through a service elevator owned and controlled by Oak Park Investment Company, manufactured by Harris-Preble, and serviced and maintained by Montgomery Elevator Company. The service elevator was not open to the public and its use was authorized only to Oak Park tenants, their suppliers, and Oak Park management and staff.

The elevator doors were designed to be closed manually by the person using the elevator. To close the doors, one pulled a strap hanging from the upper door. This would cause the doors to meet horizontally in the middle. There was one strap inside and one outside. If the inner strap was missing, there was a two-inch ledge inside the upper door which could be used. Vandals often cut the straps completely off or shortened them so they could not be properly used. There were complaints the doors were erratic and difficult to close even when the straps were present.

On the date of the accident, March 3, 1983, the inner strap was

missing. Summers attempted to close the doors from inside the elevator by reaching outside the doors with his left hand and pulling on the outer strap. The doors suddenly slammed together, catching Summers' left hand and injuring his index finger.

The first two issues allege the trial court erred in overruling Summers' motion for new trial pursuant to K.S.A. 60-259(a)(*Fifth*) and (*Sixth*), which provide:

"(a) *Grounds*. A new trial may be granted to all or any of the parties and on all or part of the issues when it appears that the rights of the party are substantially affected:

. . . .

"*Fifth*. For newly discovered evidence material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial.

"*Sixth*. That the verdict, report or decision was procured by the corruption of the party obtaining it. In this case the new trial shall be granted as a matter of right, and all the costs made in the case up to the time of granting the new trial shall be charged to the party obtaining the decision, report or verdict.

"On motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, and direct the entry of a new judgment."

The trial court has wide discretion in reviewing the evidence and determining whether a new trial should be granted pursuant to K.S.A. 60-259 because of corrupt evidence. *Smith v. Union Pacific Railroad Co.*, 214 Kan. 128, 130-31, 519 P.2d 1101 (1974).

Summers' allegations of corruption are based on Oak Park's answers to an interrogatory which asked for the details of injuries since the installation of the elevator. Oak Park answered "none" to all questions. Summers also asked for all prior correspondence concerning claims for personal injuries in the same time frame. Oak Park replied it had no documentation of any injuries.

Oak Park manager David Sprinkle testified in a deposition there could have been complaints filed of which he was not personally aware. He testified he himself knew of no other individuals who had been injured by the elevator doors. Defense counsel stated in closing argument that Summers was the only person ever injured by the elevator.

After the trial, Summers discovered two individuals had injured their hands in closing the elevator in July of 1984, after his accident but prior to the answering of the interrogatories. These individuals, Cary Pierce and George Hull, had reported their

injuries to Jim Edwards, Chief of Security for Oak Park. Correspondence between Hull's attorney and Oak Park's insurer concerning investigation of his accident was discovered. Summers contends this is clear evidence Oak Park intentionally withheld information.

The trial court stayed its decision on Summers' K.S.A. 60-259 motion for a new trial to allow him to reopen discovery in order to make certain no individuals had been injured by the elevator prior to his accident. The court ordered Oak Park to pay attorney fees and costs ultimately totalling $2,234.73 for the reopened discovery. When no prior injuries were discovered, the trial court denied Summers' motion, holding evidence of subsequent injuries would not have changed the result at trial.

Although admitting its response was inaccurate in light of the wording of Summers' discovery requests, Oak Park argues it replied in good faith and its omission was purely inadvertent. It claims Security Chief Edwards had not informed anyone of the reported injuries and, in fact, had been fired by the time of discovery for continued failure to communicate with other Oak Park personnel. Oak Park had disclosed Edwards as a former employee during discovery and Summers' counsel talked with him after the trial.

Oak Park says Sprinkle was unaware of any subsequent accidents when he answered the interrogatories. Its attorneys searched to verify Sprinkle's answers but, assuming records subsequent to the March 3, 1983, accident would be irrelevant, they did not discover the two subsequent accidents. Oak Park does not explain how the insurance company could have acted on one of the complaints without Sprinkle's knowledge since it was standard practice for him to see insurance reports.

Oak Park notes security reports prior to the accident were produced for inspection and copying by Summers' attorney. He was informed other reports could be produced if necessary but he stated he had seen all he needed to see. Such a search would have produced the report which showed the injury of George Hull. Oak Park argues it cannot be accused of attempting to conceal information which was made available.

A new trial may be granted only if we find the trial court abused its discretion in denying Summers' motion after allowing subsequent discovery to be held at the cost of Oak Park. Judicial

discretion is abused when the court's action is arbitrary, fanciful, unreasonable, or unwarranted. See *Cook v. Cook,* 231 Kan. 391, 394, 646 P.2d 464 (1982). Summers contends the subsequent accidents were relevant and his rights were substantially affected. However, subsequent accidents are not relevant to a defendant's culpability at the time of the first accident. Even if deemed to be newly discovered, producing evidence which is incompetent is not a ground for a new trial. See *Trimble, Administrator v. Coleman Co., Inc.,* 200 Kan. 350, 360, 437 P.2d 219 (1968).

Even if the newly discovered evidence could have clearly affected the outcome of the trial, we have consistently held a new trial will not be granted if the evidence could have been produced by the use of due diligence. We found there was no abuse of discretion in refusing a new trial in *Bott v. Wendler,* 203 Kan. 212, 229-30, 453 P.2d 100 (1969), where the appellants had not interviewed witnesses before trial who would have been able to supply material information.

In *Douglas v. Lombardino,* 236 Kan. 471, 489, 693 P.2d 1138 (1985), a plaintiff doctor's testimony at trial regarding the number of times he had performed a medical procedure was at variance with his deposition. Because this discrepancy could have been discovered prior to trial, we held the later discovery could not be a basis for a new trial.

Under the circumstances we hold these issues to be without merit. Attorneys for both parties should have been more thorough in their examination of the accident reports. Their oversight is understandable, however, since injuries subsequent to March 3 are irrelevant to the case. See 26 Am. Jur. 2d, Elevators and Escalators §§ 70, 71. We find no corruption or withholding of evidence by Oak Park.

The third issue is whether the trial court abused its discretion in allowing evidence before the jury which Summers contends was prejudicial and in violation of the court's order in limine.

The trial court initially granted Summers' motion in limine which barred mention of any of Summers' unrelated lawsuits, injuries, illnesses, or effects thereof until a proffer of such proposed evidence was reviewed out of the presence of the jury. The court reserved the right to admit the evidence if it then determined the evidence to be relevant.

Summers testified the only reason he had stopped hunting and fishing in the winter was because the cold hurt his finger. Defense counsel then asked him if he had given a deposition for a personal injury suit he had filed against the Widger Chemical Company. Summers' counsel objected, and the court, after a hearing at the bench to determine relevancy, overruled the objection. Defense counsel then presented Summers' deposition given February 5, 1986, in which he claimed to have been exposed to toxic fumes from Widger, after which he had not hunted because it hurt him to breathe the cold air. Summers attempted to reconcile the discrepancy at trial by testifying he had not been able to hunt in 1983 because of the toxic injury, but after that it was because of his hand injury.

This deposition is clearly admissible as a prior inconsistent statement pursuant to K.S.A. 1987 Supp. 60-232(a)(1), which provides:

"At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

"(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness."

See *State v. Worth,* 217 Kan. 393, 395, 537 P.2d 191 (1975), *cert. denied* 423 U.S. 1057 (1976).

While defense counsel's question in his cross-examination of Summers pertaining to the Widger lawsuit in the presence of the jury was technically in violation of the order in limine, the trial court in its discretion made the order and in its discretion overruled it, recognizing the prior inconsistent sworn statements of Summers as being relevant and material to the determination of damages. We hold the trial court properly admitted the evidence.

The fourth issue is whether the trial court erred in awarding attorney fees to appellee Lerner Shops as a sanction against Summers for frivolously continuing his action against it.

K.S.A. 1987 Supp. 60-211 provides the attorney filing suit for a party must swear he has determined after inquiry that the claim is well grounded in fact and warranted by existing law or a good faith argument for its modification and is not imposed for any

improper purpose. The sanction for a false swearing "may include an order to pay to the other party or parties . . . reasonable expenses . . . including reasonable attorney fees." K.S.A. 60-2007(b) provides for the assessment of costs of frivolous claims. If the court finds a plaintiff asserted a claim "without a reasonable basis in fact and not in good faith," the expenses incurred by the defendant as a result of the frivolous claim are charged against the plaintiff. The trial court found there was no reasonable basis under Kansas law for the action, but made no finding on good faith. Two separate requirements must be met before attorney fees and expenses can be assessed pursuant to K.S.A. 60-2007(b): (1) The claim asserted was without reasonable basis in fact; and (2) the claim was not asserted in good faith. *Rood v. Kansas City Power & Light Co.*, 243 Kan. 14, 755 P.2d 502 (1988).

The assessment of attorney fees under the statutes lies within the sound discretion of the trial court and will not be overturned without a clear showing of abuse. Summers bears the burden of showing the trial court abused its discretion. See *Lone Star Industries, Inc. v. Secretary, Kansas Dept. of Transp.*, 234 Kan. 121, 131, 671 P.2d 511 (1983); *Cornett v. Roth,* 233 Kan. 936, 945, 666 P.2d 1182 (1983).

Summers contacted his attorney a week before the statute of limitations had run. Counsel therefore had very little time to investigate the facts, and filed suit against all parties which might reasonably be deemed to have a duty to Summers.

Where an attorney is forced by circumstances outside his control to file a case without investigation and before demand can be made on the proposed defendant, he has the obligation thereafter to use diligence in promptly determining whether there is good cause against all parties. See *Nelson v. Miller,* 227 Kan. 271, 276, 607 P.2d 438 (1980). The court thus did not assess expenses from the date the suit was filed, but only those incurred after plaintiff's counsel had received and reviewed depositions, admissions, and copies of the lease between Lerner and Oak Park. This information showed the elevator was not on Lerner's property and Oak Park retained all ownership, control, and duty to maintain. The court held Summers' counsel should have at this point acceded to Lerner's request that it be dropped from the suit.

The general rule is that a tenant has no duty of care towards premises not in his ownership, possession, or control. This rule excludes a store's liability for common areas owned and controlled by a lessor shopping mall. See Annot., 48 A.L.R.3d 1163. The advent of shopping centers has given rise to a few cases cited by Summers, in which the question of control has been held to be a question of fact not answered by the terms of a store's lease. See *Wilson v. Allday*, 487 So. 2d 793 (Miss. 1986), and *Jackson v. K-Mart Corp.*, 182 N.J. Super. 645, 442 A.2d 1087 (1981).

The last expression of Kansas law on this subject was by the Court of Appeals in *Hall v. Quivira Square Development Co.*, 9 Kan. App. 2d 243, 244, 675 P.2d 931, *rev. denied* 235 Kan. 1041 (1984). The plaintiff in that case had been shopping in a drugstore in a shopping center owned by Quivira before she fell and injured herself in the parking lot 40 feet away from the drugstore. The parking lot was owned, controlled, and maintained by Quivira. The Court of Appeals affirmed summary judgment granted to the drugstore, reiterating our law that the common area of a leased area which a tenant is merely entitled to use, without having control, is the liability of the lessor. See *Borders v. Roseberry*, 216 Kan. 486, 488-91, 532 P.2d 1366 (1975).

It is clear Summers' recovery from Lerner is precluded under *Quivira*. The question remains, however, whether the facts of the case and the law of other jurisdictions provide sufficient evidence that Summers made a good faith effort to modify Kansas law.

As in all difficult decisions, there are meritorious arguments on both sides. It is the trial court's duty to weigh the dangers of each. The risk of overtaxing the judicial system with frivolous litigation and its excess expenses to the defendants must be weighed against the proposition that the courts are constitutionally committed to the promise that every person is entitled to a remedy for a wrong by due process of law. To keep this promise, the system must be sufficiently open to tolerate an innovative challenge to present theories of the law. Otherwise, we remain mired in the mistakes of the past.

The rules of *Jackson*, 182 N.J. Super 645, and *Wilson*, 487 So. 2d 793, might have been sufficient to support a good faith effort to overrule *Quivira*. Summers failed, however, to directly argue

for the overruling of *Quivira*. This is sufficient evidence of a lack of good faith to support the trial court's finding. We hold the trial court did not abuse its discretion by imposing sanctions.

The final issue is whether the trial court committed reversible error in failing to submit Summers' proposed instructions to the jury. We have long adhered to the rule that it is the duty of the trial court to instruct the jury on Kansas law governing the theories of the parties. *Garrison v. Marlatt*, 224 Kan. 390, 580 P.2d 885 (1978).

The trial court refused Summers' proposed instructions PIK Civ. 2d 3.02 and PIK Civ. 2d 14.73 (1986 Supp.), on reckless or wanton conduct, ruling Summers had not made a prima facie case of such conduct. This ruling prevented the giving of Summers' proposed instruction PIK Civ. 2d 9.44 on punitive damages. Summers contends evidence of the long period of time during which straps were missing and the elevator doors were difficult to close was sufficient to show wanton negligence and reckless indifference to the consequences. If reasonable minds could differ as to whether conduct constitutes wantonness, the question is one of fact for the jury. *Bowman v. Doherty*, 235 Kan. 870, 686 P.2d 112 (1984).

Appellees argue Summers, by showing the length of time straps were missing, merely showed that they knew or should have known of the problem, a requirement which must be met in order to find ordinary negligence. See *Smith v. Mr. D's, Inc.*, 197 Kan. 83, 85, 415 P.2d 251 (1966). There is no evidence of injury caused by the elevator prior to Summers' accident. Appellees thus argue they could not have been found to have acted "with *a realization* of the imminence of danger and a reckless disregard or complete indifference to the *probable consequences* of the act." PIK Civ. 2d 3.02. See *Roberts v. Beebe*, 200 Kan. 119, 126, 434 P.2d 789 (1967). Nor, they contend, could they have been found to "know or have reason to know of facts which create a high degree of risk of harm to another, and then, indifferent to what harm may result," failed to act. PIK Civ. 2d 14.73 (1986 Supp.).

We hold there was insufficient evidence of willful and wanton conduct to support an instruction thereon.

The trial court refused Summers' proposed instructions PIK Civ. 2d 15.40 and 15.41 on the heightened duty of care owed a

passenger in a common carrier, holding an elevator is not a common carrier.

Black's Law Dictionary 249 (5th ed. 1979), defines a "common carrier" as:

"Any carrier required by law to convey passengers or freight without refusal if the approved fare or charge is paid in contrast to private or contract carrier. One who holds himself out to the public as engaged in business of transportation of persons or property from place to place for compensation, and who offers services to the public generally."

The definition does not meet the characteristics of most elevators, and we find no Kansas case holding an elevator to be a common carrier. The statutory and case law definitions of the term do not include elevators. See K.S.A. 66-1,215; *State, ex rel., v. Sinclair Pipe Line Co.*, 180 Kan. 425, 439, 304 P.2d 930 (1956). We hold the elevator in this action is not a common carrier and that the duty to the public with regard to it is that of ordinary care. We find no error in refusing to give the proposed instruction.

The trial court denied Summers' proposed instruction on the doctrine of res ipsa loquitur. Under the doctrine of res ipsa loquitur, "the thing speaks for itself," a defendant may be found liable merely from the fact that an accident occurred if the instrument causing the injury is within the defendant's exclusive control, the accident is of the kind which does not ordinarily occur in the absence of negligence, and the accident is not caused by contributory negligence on the part of the plaintiff. *Arnold Associates, Inc. v. City of Wichita*, 5 Kan. App. 2d 301, 309, 615 P.2d 814 (1980), *rev. denied* 229 Kan. 669 (1981). We held the doctrine did not apply against appellee Montgomery in *Bias v. Montgomery Elevator Co.*, 216 Kan. 341, 532 P.2d 1053 (1975), because the freight elevator was not in the exclusive control of the defendant and there was evidence of contributory negligence. In the present case we find no error in refusing to give the requested instruction on res ipsa loquitur.

The trial court denied Summers' proposed instructions PIK Civ. 2d 13.04, 13.05, and 13.22 on Montgomery's strict liability as a seller of a product under a product liability theory. Summers failed to indicate he was proceeding under any theory other than comparative negligence. There was no allegation in the pleadings or pretrial order which would support a claim for liability for

inherent defect or that Montgomery sold a defective product to Oak Park. We find no trial error on this issue.

The trial court refused three instructions that an owner of property is not excused from its duty to protect others from danger on its property by the intervening acts of others. Summers claims this instruction was necessary because there was evidence the straps were repeatedly stolen by vandals. Oak Park does not contend the vandalism affected their duty towards Summers. Rather, it argues the elevator could have been safely operated without the straps. The court instructed the jury that the appellees were under a duty to conduct themselves reasonably under the circumstances. The jury was instructed Summers claimed appellees were at fault for the missing strap, and was instructed in order to find liability it only need find that appellees had knowledge of or should have had knowledge of a dangerous condition. We find no error.

Summers also complains the trial court did not instruct on hidden defects. We will not consider this argument as there is no evidence in the record of such an instruction being proposed.

The judgment of the trial court is affirmed.