No. 81,826

SARAH WOOD, LINDA WOOD, and WARREN WOOD, *Appellants/ Cross-appellees,* v. DERRY GROH and CHOON GROH, *Appellees/ Cross-appellants.*

(7 P.3d 1163)

Opinion filed June 9, 2000.

*David R. Cooper*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause, and *David P. Madden*, of the same firm, of Overland Park, and *Don C. Krueger*, of Krueger & Huth Law Office, of Emporia, were with him on the briefs for appellants/cross-appellees.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown & Enochs, Chtd., of Overland Park, argued the cause, and *Jeffrey W. Deane*, of the same firm, was with him on the briefs for appellees/cross-appellants.

The opinion of the court was delivered by

DAVIS, J.: The primary question in this appeal involves the civil standard of care required of those persons having ownership or control of a firearm. The defendant parents kept a .22 caliber handgun in their home. Their minor son obtained the gun and later accidently shot the plaintiffs' minor daughter. In the plaintiffs' personal injury action against the parents, the jury was instructed that the standard of care required of the parents was that of reasonable

care. However, the standard of care required in this state is the highest degree of care. We reverse and remand for further proceedings.

On the afternoon of May 27, 1995, Ed Groh, age 15, used a screwdriver to open his father's locked gun cabinet and removed a .22 caliber handgun. The gun was not loaded; however, the loaded ammunition clip, as well as additional ammunition, was stored in the cabinet along with the gun. Ed took the gun and ammunition to a friend's house where he and some friends drank beer and practiced "target shooting with some cans." Later that night, Ed went to a party at the Archdekins' house. There were no adults present at the party. Ed carried the gun with him and showed it to others at the party. Sarah Wood, age 15, arrived at the party around midnight. Both Sarah and Ed consumed alcoholic beverages at the party.

At about 1:30 or 2 a.m., Ed left the party to drink more beer at another friend's house. He returned to the party and at approximately 2:30 a.m., as Sarah and Ed proceeded up the stairs at the Archdekins' house, the gun accidentally discharged, striking Sarah in the left buttock.

Sarah and her parents, Linda and Warren Wood, filed suit against Ed's parents, Derry and Choon Groh, alleging negligent parental supervision and negligent safeguarding of a gun. The Archdekins were also named defendants in the suit but were dismissed on summary judgment and are not involved in this appeal.

Trial testimony established that Derry Groh had taken his son target shooting with the gun five or six times. Derry specifically forbade Ed from using the gun without strict parental supervision. Ed knew that he was not to take any of the weapons from the cabinet without Derry's permission. Derry was the only person with a key to the gun cabinet and he kept the key on his personal key ring at all times.

Linda Wood testified, however, that Ed told her that Derry knew he had the gun and that Derry knew that he occasionally took the gun from the cabinet and shot it. Testimony also revealed that Ed had been arrested prior to the shooting for taking someone's car without permission and "joyriding." Under the terms of his pro-

bation from that incident, Ed was not to possess a firearm without the permission of his probation officer. Derry took Ed target shooting with the gun shortly after the joyriding incident. Ed had a curfew of 11 to 11:30 p.m. on weekends, which he violated by being at the party well past midnight on the night of the shooting. Neither of the Grohs knew where Ed was the night of the shooting.

A jury returned a verdict in favor of the Woods, finding the Grohs 10% at fault, Sarah 20% at fault, and Ed, who was not a party to the lawsuit, 70% at fault. The jury awarded $100,000 in damages to Sarah and $9,162.50 to her parents, Linda and Warren Wood. Judgment was, therefore, entered in favor of Sarah in the amount of $10,000 and in favor of Linda and Warren in the amount of $916.25.

The Woods raise two issues on appeal: (1) whether the district court erred in refusing to instruct the jury that the Grohs owed the highest degree of care in safeguarding a handgun; and (2) whether the district court erred by refusing to find the Grohs jointly and severally liable for the combined fault of themselves and their son. The Grohs raise three issues on cross-appeal: (1) whether the district court erred by refusing to impose sanctions for the Woods' post-trial filings; (2) whether the district court properly instructed the jury on the issue of negligent parental supervision of their son; and (3) whether the district court erred by instructing the jury that the Grohs could be found negligent for failing to prevent their son from breaking into a locked gun cabinet.

*(1) Whether the district court erred in refusing to instruct the jury that the Grohs owed the highest degree of care in safeguarding a handgun.*

### Standard of Review

The trial court is required to properly instruct the jury on a party's theory of the case. Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are substantially

correct and the jury could not reasonably have been misled by them, the instructions will be approved on appeal. *Hawkinson v. Bennett*, 265 Kan. 564, 577-78, 962 P.2d 445 (1998). Where, however, the appellate court reaches a firm conviction that if the trial error had not occurred, there is a real possibility that the jury would have returned a different verdict, the appellate court must reverse and remand. *Jackson v. City of Kansas City*, 263 Kan. 143, 148, 947 P.2d 31 (1997).

### Discussion and Analysis

The Woods objected to jury Instruction No. 14, which stated:

"The plaintiffs, Sarah Wood, Warren Wood and Linda Wood, claim that they sustained damages due to the negligence of Ed Groh.

"The plaintiffs also claim that they sustained damages due to the fault of Derry Groh and Choon Groh as follows:

(a) *Derry Groh and Choon Groh failed to exercise reasonable care to prevent their son, Ed Groh, from gaining access to the gun;*

(b) Derry Groh and Choon Groh failed to exercise reasonable care to ascertain the whereabouts of their minor child, Ed Groh; and

(c) Derry Groh and Choon Groh failed to properly exercise reasonable care in the parental supervision over their minor child, Ed Groh." (Emphasis added.)

In place of Instruction 14, the Woods proposed the following instruction:

"The duty of one owning a handgun is that of the *highest degree of care* in safekeeping the handgun because a handgun is considered an inherently dangerous instrument. [Citations omitted.]" (Emphasis added.)

The proposed instruction was denied based upon the district court's conclusion that a handgun is "not a dangerous instrumentality when it's in an unloaded state."

Recently, in *Long v. Turk*, 265 Kan. 855, 962 P.2d 1093 (1998), this court addressed the standard of care required when dealing with a dangerous instrumentality. In *Long*, the defendant's minor son, Matthew, was driving his car when he encountered the plaintiff's minor son, Tony, driving a van. Matthew and Tony shouted at each other while the vehicles drove side-by-side for a few blocks. Matthew eventually reached under the floor mat and pulled out his father's .357 Magnum handgun and fired one shot out the pas-

senger side window. The hollow point slug went through the window of Tony's van, killing him.

Matthew's father owned several guns which were kept in a locked safe, although Matthew knew where the keys were kept. A .357 Magnum and the hollow point bullets for the gun were kept in a gun cabinet. Testimony conflicted as to whether Matthew had permission to take the gun out of the locked cabinet. After depositions were taken of Matthew and his father, Matthew's father moved for summary judgment, asking the court to dismiss the case. The district court granted the motion for summary judgment.

On appeal, this court reversed the summary judgment, concluding that genuine issues of material fact existed. We concluded that the .357 Magnum handgun was a dangerous instrumentality requiring the highest degree of care. 265 Kan. at 860. We examined the history in this state regarding the standard of care required in dealing with a dangerous instrumentality. Quoting from an earlier opinion of *Wroth v. McKinney*, 190 Kan. 127, 373 P.2d 216 (1962), we stated:

" 'Kansas has long followed the rule that the highest degree of care is required of all responsible persons having ownership or control of dangerous explosives such as dynamite *and firearms*. . . . [T]he degree of care has to be commensurate with the dangerous character of the instrumentality and a duty to exercise the highest degree of care never ceases.' " 265 Kan. at 861.

*Long* referred to and quoted from Comment b of the Restatement (Second) of Torts § 298 (1964):

" 'Care required. The care required is always reasonable care. This standard never varies, but the care which it is reasonable to require of the actor varies with the danger involved in his act, and is proportionate to it. The greater the danger, the greater the care which must be exercised.'

" '. . . Thus, those who deal with firearms . . . are required to exercise the closest attention and the most careful precautions, not only in preparing for their use but in using them.' " 265 Kan. at 861-62.

This court determined in *Long* that firearms are inherently dangerous instrumentalities and commensurate with the dangerous character of such instrumentalities, the reasonable care required was the highest degree of care. *Long* had not been decided at the time this case was submitted to the jury. Nevertheless, consistent

with *Long* and the cases cited therein, we conclude that the district court erred by not instructing the jury that the highest standard of care is required when dealing with a dangerous instrumentality.

The instructional error in this case goes to the heart of the controversy. The factual issue to be decided by the jury was whether the Grohs were negligent in storing the gun. There is a substantial difference between the two standards proposed: ordinary care or the highest degree of care. Other jurisdictions considering instructional errors concerning the standard of care to be applied by the jury in its evaluation of the defendant's conduct have concluded that such an error requires reversal. See *Ruth v. Rhodes*, 66 Ariz. 129, 137, 185 P.2d 304 (1947) (noting generally that failure to instruct on the proper standard of care to which a defendant should be held is usually reversible error, for it is improper that a jury should be allowed to hold against a party when it was given the wrong standard by which to measure the party's conduct); *Bailey v. Rose Care Center*, 307 Ark. 14, 19, 817 S.W.2d 412 (1991) (holding that reversal was required where the court instructed the jury on the wrong standard of care); *Wilson v. City & County of S. F.*, 174 Cal. App. 2d 273, 277, 344 P.2d 828 (1959) (reversal required where jury instructions misled jury into applying ordinary care standard instead of heightened standard of care to carrier); *Blackwell's Adm'r v. Union Light, Heat & Power Co.*, 265 S.W.2d 462, 464-65 (Ky. App. 1953) (holding that instruction which erroneously defined the "highest degree of care" so as to mislead jury into believing that the defendant was held to standard of ordinary care was error requiring reversal); *Lindstrom v. Yellow Taxi Co.*, 298 Minn. 224, 230, 214 N.W.2d 672 (1974) (affirming the trial court's decision to grant a new trial where the trial court had erroneously instructed the jury in a way that led the jury to believe that the defendant was held to an ordinary care standard rather than the "highest degree of care" standard); *Urban v. Minneapolis Street Ry. Co.*, 256 Minn. 1, 6, 96 N.W.2d 698 (1959) (holding that the instructions were confusing as the jury was likely to evaluate the defendant's actions under an ordinary care standard rather than the "highest degree of care" standard); *Woods v. Chinn*, 224 S.W.2d 583, 587 (Mo. App. 1949) (giving of instruction which

placed ordinary care standard on party rather than "highest degree of care" was erroneous, thereby requiring reversal); *Jones v. Port Authority*, 136 Pa. Commv. 445, 448-49, 583 A.2d 512 (1990) (noting that carriers owe a heightened duty of care to their fare paying passengers and holding that the trial court erred in instructing the jury in such a way as to mislead it into applying an ordinary care standard); *Magbuhat v. Kovarik*, 382 N.W.2d 43, 46 (S.D. 1986) (noting that it is prejudicial to instruct the jury on the wrong standard of care); and *Coyle v. Metro Seattle*, 32 Wash. App. 741, 747, 649 P.2d 652 (1982) (holding that instructions were confusing to jury and that jury could have been misled into thinking that the defendant only had a duty of ordinary care when jury should have evaluated defendant under a "highest degree of care" standard).

We have concluded that the parents in this case owed the highest duty to protect the public from the misuse of the gun, a dangerous instrumentality, stored in their home. The fact that the gun was not loaded is insignificant, for the ammunition was kept in the same locked cabinet as the gun. Once access to the gun was obtained, access to the ammunition immediately followed. Storage of the ammunition in the same location as the gun in this case resulted in the gun being easily loaded and made it a dangerous instrumentality.

The parents took significant steps to prevent their son from obtaining possession of the gun. The gun cabinet was locked at all times. Derry Groh was the only person with a key to the cabinet. The key was on his key ring and in his possession at all times. Their son was told and was aware that he was not to use the guns without parental supervision. Their son had attended and passed a hunter safety class. Their son, however, only had to use a screwdriver to gain access to the cabinet and was able to obtain possession of both the gun and the ammunition by doing so.

We conclude, under the facts of this case, that the instructional error did result in prejudice to the plaintiffs. There is a real possibility that the jury would have returned a different verdict had the correct standard been given to the jury in measuring the conduct of the parents. We, therefore, reverse and remand for further proceedings.

*(2) Whether the district court erred by refusing to find the Grohs
jointly and severally liable for the combined fault of themselves and
their son.*

The Woods argue that the district court erred by refusing to find
the Grohs jointly and severally liable for the acts of their son.

*Standard of Review*

The interpretation of K.S.A. 60-258a is a question of law and,
thus, this court's scope of review is unlimited. See *Hamilton v. State
Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998)
(noting that our review is unlimited where the issue is interpreta-
tion of a statute).

*Discussion and Analysis*

The Woods objected to submission of this case on a theory of
comparative fault pursuant to K.S.A. 60-258a. They argue that the
Grohs should be jointly and severally liable for the 70% fault found
on the part of their minor son, Ed. They rely on several cases
dealing with the duty to control one who intentionally injures an-
other. See *Kansas State Bank & Tr. Co. v. Specialized Transpor-
tation Services, Inc.*, 249 Kan. 348, 374-76, 819 P.2d 587 (1991)
(imposing joint liability upon those whose duty is to prevent third
parties from inflicting injury); *Gould v. Taco Bell*, 239 Kan. 564,
571, 722 P.2d 511 (1986) (intentional acts of a third party cannot
be compared with the negligent acts of a defendant whose duty it
was to protect the plaintiff from the intentional acts committed by
the third party); *M. Bruenger & Co. v. Dodge City Truck Stop,
Inc.*, 234 Kan. 682, 686-87, 675 P.2d 864 (1984) (holding the dis-
trict court should not have permitted the fault of the negligent
bailee to be compared with that of the intentional act of the thief).

The above-cited cases provide no support for the plaintiffs' ar-
gument. The shooting in this case was accidental. The record con-
firms this and provides no evidence otherwise. Where joint tort-
feasors are liable on a theory of negligence, their fault must be
compared pursuant to K.S.A. 60-258a. The concept of joint and
several liability between joint tortfeasors does not apply in com-
parative negligence actions. *Brown v. Keill*, 224 Kan. 195, Syl. ¶
5, 580 P.2d 867 (1978).

*Cross-petition: (1) Whether the district court erred by refusing to impose sanctions for the Woods' post-trial filings.*

Following the trial, the Woods filed a motion to amend to conform to the evidence, a motion to substitute parties, and an objection to the entry of judgment. The thrust of the Woods' motions was to attempt to make the Grohs responsible for the fault of Ed, as the jury had apportioned his fault at 70% and apportioned only 10% fault on the Grohs. A hearing was held and the district court denied the motion to amend and motion to substitute parties. The district court overruled the objection to the entry of judgment. The district court found that the motions "were unnecessary enough to what I consider, without mincing words, garbage. I think they were not appropriate . . . ." The court further noted that it was "convinced that some of the documents filed in this case are an attempt to backdoor judgment against a party [Ed] who has been denied his due process rights." The court also noted that the motions filed by the Woods "rise to the level of legal garbage." Although the court found that the three post-trial filings violated K.S.A. 1999 Supp. 60-211(b), the court chose to verbally admonish the Woods' counsel instead of awarding attorney fees as the Grohs had requested.

### Standard of Review

The imposition of sanctions pursuant to K.S.A. 1999 Supp. 60-211 is discretionary with the trial court, and its ruling on sanctions will not be disturbed on appeal absent an abuse of discretion. *Summers v. Montgomery Elevator Co.*, 243 Kan. 393, 399, 757 P.2d 1255 (1988); *Cornett v. Roth*, 233 Kan. 936, 945, 666 P.2d 1182 (1983). Judicial discretion is abused only where no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973).

The Grohs argue that because the court made a finding that K.S.A. 60-211(b) was violated, the statute requires that the court "shall" award sanctions. Because this is a question involving the

interpretation of 60-211, the standard of review is unlimited, as the interpretation of a statute is a question of law. *Smith v. Printup*, 262 Kan. 587, 603-04, 938 P.2d 1261 (1997).

*Discussion and Analysis*

The Grohs argue that because the district court found that the Woods' post-trial filings were "unnecessary" and "not appropriate," the court was required to award sanctions in the form of attorney fees.

K.S.A. 1999 Supp. 60-211 provides in pertinent part:

"(c) . . . If a pleading, motion or other paper provided for by this article is signed in violation of this section, the court, upon motion or upon its own initiative upon notice and after opportunity to be heard, *shall impose* upon the person who signed it or a represented party, or both, an appropriate sanction, which *may include* an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including reasonable attorney fees." (Emphasis added).

The plain wording of K.S.A. 1999 Supp. 60-211(c) requires that a district court "shall impose" a sanction when a violation of K.S.A. 1999 Supp. 60-211(b) is found, as in this case. The statute, however, does not specifically require a sanction of attorney fees, as it gives the district court the discretion to apply "an appropriate sanction." Further, the statute indicates that the sanction "may include" attorney fees. The statute does not require a district court to award monetary sanctions for a violation of 60-211(b). The word "sanction" does not require courts to award "fees" as the Grohs argue.

Kansas courts often look to the case law on the federal rules as guidance for interpretation of our own rules, as the Kansas rules of civil procedure were patterned after the federal rules. See *Stock v. Nordhus*, 216 Kan. 779, 782, 533 P.2d 1324 (1975) (noting that the Kansas courts have traditionally followed the interpretation of federal procedural rules and that the federal case law is highly persuasive). Although Fed. R. Civ. Proc. 11 is not identical to K.S.A. 1999 Supp. 60-211, the intent behind the rules is the same. The purpose of both rules is to deter "repetition of improper conduct." *Waltz v. County of Lycoming*, 974 F.2d 387, 390 (3d Cir.

1992). An award of attorney fees "should not automatically be the sanction of choice." 974 F.2d at 390.

Courts should take the following factors into consideration when determining whether to sanction a party and what kind of sanction to impose:

(1) whether the improper conduct was willful or negligent;

(2) whether it was part of a pattern of activity or an isolated event;

(3) whether it infected the entire pleading or only one particular count or defense;

(4) whether the person has engaged in similar conduct in other litigation;

(5) whether it was intended to injure;

(6) what effect it had on the litigation process in time or expense;

(7) whether the responsible person is trained in the law;

(8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and

(9) what amount is needed to deter similar activity by other litigants.

Fed. R. Civ. Proc. 11, Advisory Committee notes 1993.

We hold that the plain meaning of K.S.A. 1999 Supp. 60-211(c), coupled with the legislative intent of the statute, allows courts to impose nonmonetary sanctions in the form of admonitions, as well as monetary sanctions. Courts are not required to award attorney fees when a violation of K.S.A. 1999 Supp. 60-211(b) is found. The district court has the discretion to determine what type of sanctions are appropriate in a given case. The district court did not abuse its discretion in admonishing the Woods for the filing of the three post-trial motions.

*(2) Whether the district court properly instructed the jury on the issue of negligent parental supervision.*

The Grohs, in their cross-appeal, argue that there was insufficient evidence to justify a jury instruction on the issue of negligent parental supervision. Although the Grohs frame this issue as one

of an incorrect jury instruction, the argument actually concerns a sufficiency of evidence question.

*Standard of Review*

"[W]hen a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, [the appellate court] does not weigh the evidence or pass on the credibility of the witnesses. 'If the evidence, with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the prevailing party, supports the verdict, it will not be disturbed on appeal.' " *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 127, 815 P.2d 72 (1991).

*Analysis and Discussion*

The Restatement (Second) of Torts § 316 (1964) sets forth the tort of negligent parental supervision and states:

"A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
  (a) knows or has reason to know that he has the ability to control his child, and
  (b) knows or should know of the necessity and opportunity for exercising such control."

The jury was given Instruction No. 14A, which states:

"A parent is under a duty to exercise reasonable care to control their minor child as to prevent said child from intentionally harming others or from so conducting themselves as to create an unreasonable risk of bodily harm to others, if the parents know or have reason to know that they have the ability to control their child and know or should know of the necessity and opportunity for exercising such control."

Contrary to the Grohs' argument, Instruction No. 14A is a correct statement of the tort of negligent parental supervision. The instruction given is consistent with the Restatement (Second)of Torts and with the Court of Appeals' decision in *Mitchell v. Wiltfong*, 4 Kan. App. 2d 231, 604 P.2d 79 (1979), and properly framed the question raised by the evidence.

*(3) Whether the district court erred by instructing the jury that the Grohs could be found negligent for failing to prevent Ed from breaking into a locked gun cabinet to obtain the .22 caliber handgun.*

The Grohs make an additional argument concerning Instruction No. 14A. They argue that there was insufficient evidence adduced at trial to support Instruction No. 14A. The only real issue concerns the second element of the tort concerning the question of whether the Grohs "knew or should have known of the necessity and opportunity for exercising such control."

Although the evidence at trial revealed that Ed had only one previous run-in with the law, the Grohs knew that Ed had a curfew and that it was a violation of his probation to possess a gun without the permission of his probation officer. Linda Wood testified that at the hospital after the incident, she asked Ed if Derry Groh knew he had the gun, and that Ed told her, "[H]e knows I take it sometimes and shoot it." The evidence, with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the prevailing party, was sufficient to support the giving of Instruction 14A. See *Brown v. United Methodist Homes for the Aged,* 249 Kan. at 127.

The Grohs argue that the "case should never have been submitted to the jury and a judgment should have been entered in favor of Defendants and against Plaintiffs on all counts." The Grohs further suggest that this court "remand the case to the Trial Court with instructions to enter judgment in favor of Defendants and against Plaintiffs on all counts as the case was improperly submitted to the jury when, in fact, it was a question of law to be resolved in Defendant's favor by the Trial Court." The Grohs claim that there was insufficient evidence adduced at trial to show that the Grohs breached a duty of ordinary care in the safeguarding of the gun and, therefore, the case should have been dismissed.

A review of the record reveals that the Grohs did not raise this issue in the district court. An objection was made to Instruction No. 14 in which the Grohs argued that the evidence did not show they breached any duty of care in the safekeeping of the gun, but no motion was made to dismiss the case. Their trial objection related solely to the language used in the instruction. They did not move for dismissal, nor did they seek summary judgment on this issue. Issues not raised before the trial court cannot be raised for the first time on appeal. *Ripley v. Tolbert,* 260 Kan. 491, 513, 921

P.2d 1210 (1996). A new legal theory may not be asserted for the first time on appeal or raised in a reply brief. *Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, 622, 938 P.2d 1293 (1997).

The Grohs further argue that the issue of negligence in the safe-keeping of the gun was improperly before the jury because they cannot be negligent in keeping a gun locked in a cabinet where the only way to access the cabinet was by breaking into it with a screwdriver. In other words, the Grohs argue that they cannot be negligent for locking a gun in a gun cabinet. The Grohs correctly note that owners of firearms are not strictly liable for their misuse.

However, although the gun was kept in a locked cabinet, the gun was taken from the cabinet when Ed used a screwdriver to easily break into the cabinet. Even though the ammunition was stored in a separate compartment within the cabinet, it was still accessible by breaking into the cabinet with a screwdriver. It was a simple process for their minor child to break into the cabinet and load the ammunition clip into the gun once the cabinet was open. The question to be resolved is whether the parents used the highest degree of care is storing the gun their son used in accidentally injuring the plaintiff. There are sufficient disputed facts in this case to require that the matter be resolved by the jury on appropriate instruction.

Reversed and remanded.

ABBOTT, J., dissenting: As I read the record, Linda Wood asked whether Derry Groh knew Ed Groh had the gun and Ed replied, "[H]e knows I take it sometimes and shoot it." The testimony was consistent throughout that Ed only shot the gun when Derry was along and supervising. I find nothing in the briefs which indicate that Derry ever allowed Ed to have the gun unsupervised. Ed's comment that he occasionally took the gun from the cabinet and shot it can only be interpreted as having the gun when he was with his father.

Here, the gun was under lock and key, and Derry kept control of the key. The majority, in my opinion, makes it almost absolute

liability to own a gun. What more can a gun owner do than lock up an unloaded gun and keep control of the key.

I would hold the Grohs were not negligent as a matter of law.

MCFARLAND, C.J., joins in the foregoing dissenting opinion.