(24 P.3d 169)

No. 85,142

ESTATE of CANDY JO BECKNER, Deceased, by LELAND BECKNER, Administrator and Surviving Spouse, *Appellant*, v. DANIEL L. JENSEN and VICKY K. JENSEN, *Appellees*.

Opinion filed May 11, 2001.

*Michael T. Metcalf* and *Danne W. Webb*, of Miller Law Firm, P.C., of Kansas City, Missouri, and *Dennis P. Wetta*, of Smith, Shay, Farmer & Wetta, of Wichita, for appellant.

*Craig Kennedy*, of Johnson, Kennedy, Dahl & Willis, of Wichita, for appellee.

Before GERNON, P.J., GREEN and BEIER, JJ.

GREEN, J.: The estate of Candy Jo Beckner appeals the district court's dismissal of its wrongful death claim. On appeal, the estate contends that the trial court wrongly granted Daniel and Vicky Jensen's motion to dismiss. We disagree and affirm.

The Jensens had a son, Nathan, who attended Northwest High School's prom. They allowed their son to host a post-prom overnight "sleep over" party in their basement for 8 to 12 high school students. None of the students consumed any alcohol at the party, and Daniel went downstairs at least twice to check on the students.

Andrew Schaffer attended this party and arrived around 1 a.m. Before the party, Schaffer did not know Nathan or the Jensens. He remained awake all night except for about an hour in the morning between 6 and 7 a.m.

While driving home in his van, Schaffer left the road and struck Candy Jo Beckner who was riding her bike on the shoulder of 21st Street near 295th Street West, outside Wichita. Beckner died as a result of her injuries.

Beckner's estate sued the Jensens for the wrongful death of Beckner. The Jensens answered and moved to dismiss the case for failure to set forth a valid cause of action against them. After a hearing on the motion, the district court granted the Jensens' motion to dismiss the case.

On a procedural issue, the estate asserts that the district court improperly granted the motion to dismiss when it considered material extraneous to its petition. As a result, the Jensens' motion should have been viewed as one for summary judgment. At a hearing on the motion to dismiss, the district judge refused to consider the motion as a summary judgment motion.

The estate's argument is flawed. "K.S.A. 60-212(b) says if 'matters outside the pleading are presented to *and not excluded by the court*, the motion [to dismiss for failure to state a claim upon which

relief can be granted] shall be treated as one for summary judgment.' (Emphasis added.)" *Goldbarth v. Kansas State Board of Regents*, 269 Kan. 881, 885, 9 P.3d 1251 (2000). A review of the transcript and the district court's decision reveals that the parties placed information from Andrew Schaffer's deposition before the court, but the court did not consider these materials. The district court followed 60-212(b)(6) in resolving the motion.

The district judge's knowledge of facts other than those contained in the pleadings are not grounds for a reversal. Ultimately, the judge did not consider documents outside the petition in making his decision. There was no error in the district court's procedural ruling.

"When a motion to dismiss raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's complaint. K.S.A. 60-212(b)(6). Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim. [Citation omitted.]" *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 267 Kan. 245, 250, 978 P.2d 922 (1999).

"In a negligence case, plaintiff must establish a duty, breach of the duty, damages, and a causal connection between the duty breached and the damages. The existence of a duty is a question of law, while whether a duty has been breached is a question of fact. [Citation omitted.]" *McCleary v. Boss*, 24 Kan. App. 2d 791, 792, 955 P.2d 127 (1997), *rev. denied* 264 Kan. 822 (1998).

## SPECIAL RELATIONSHIP AND RESTATEMENT (SECOND) OF TORTS § 315

The first question in this appeal is whether the Jensens had a duty to Beckner. "As a general rule, in the absence of a 'special relationship' there is no duty on an actor to control the conduct of a third person to prevent harm to others. [Citations omitted.]" *Washington v. State*, 17 Kan. App. 2d 518, 521, 839 P.2d 555, *rev. denied* 252 Kan. 1095 (1992).

The estate contends that as a matter of law a special relationship existed between Beckner and the Jensens and that a duty may be found in Restatement (Second) of Torts § 315 (1964).

The Restatement (Second) of Torts § 315 provides:

"There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

"(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

"(b) a special relation exists between the actor and the other which gives to the other a right to protection."

Comments to § 315 direct the reader to other sections for the "special relations" upon which the duty is based. These relationships include parent and child, master and servant, possessor of land or chattels and licensee, one in charge of a person having dangerous propensities, common carrier and passenger, innkeeper and guest, possessor of land and invitee, and one who takes custody of another so as to deprive the latter of normal protection. See Restatement (Second) of Torts §§ 314A, 316-20 (1964). None of the special relationships listed earlier are analogous to the relationship between Beckner and the Jensens or between Schaffer and the Jensens. The estate cites no cases where a Kansas appellate court determined a special relationship existed under similar facts to this case.

The estate cites *Wood v. Groh*, 269 Kan. 420, 7 P.3d 1163 (2000), in its reply brief to support its contention that a relevant special relationship existed. Nevertheless, the estate's reliance on *Groh* is fatally flawed because *Groh* is distinguishable on its facts. In *Groh*, a minor who was shot and her parents brought a personal injury action against a gun owner and his wife, after the gun owner's minor son accidentally shot the victim at a late-night party. Despite the fact that the Grohs locked their gun cabinet, our Supreme Court found that sufficient evidence existed to support the jury instruction on negligent parental supervision because their son was easily able to break into the cabinet with a screwdriver. Critical distinguishing facts in *Groh* were the existence of a parent-child relationship between the gun owner and the tortfeasor and the court's finding that firearms are inherently dangerous instrumentalities requiring the highest degree of care.

In another effort to show a special relationship, the estate cites to the Restatement (Second) of Torts § 318 (1964) and claims a

duty of a possessor of land to control the conduct of a licensee. The Restatement (Second) of Torts § 318 states:

"If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor
    "(a) knows or has reason to know that he has the ability to control the third person, and
    "(b) knows or should know of the necessity and opportunity for exercising such control."

Comment b of § 318 provides:

"The rule stated in this Section is applicable where the possessor of a chattel or of land is present when the chattel is being used or the activity is being carried on with his permission, and when, therefore, he has not only the ability to control the conduct of the third person as possessor, but also the opportunity to do so."

In only two instances has Kansas case law addressed this section. In both instances, the licensee was still on the landowner's property or using the possessor's chattel when the injury occurred. See *Gragg v. Wichita State Univ.*, 261 Kan. 1037, 1045-46, 934 P.2d 121 (1997) (§ 318 did not apply because defendants lacked sufficient knowledge to control assailant's actions); *Vetter v. Morgan*, 22 Kan. App. 2d 1, 7, 913 P.2d 1200 (1995) (car being used belonged to defendant's father, so the defendant had "a peculiar ability" to control the manner in which the car was driven).

Section 318 is inapplicable because the tort did not occur on the Jensens' property nor did Schaffer use the Jensens' car to drive home. We could find no Kansas case extending this duty to cover the licensee after leaving the landowner's property.

## PROTECTION OF A THIRD PERSON AND RESTATEMENT (SECOND) OF TORTS § 324A (1964)

Next, the estate maintains that the trial court wrongly granted the motion to dismiss because under the Restatement (Second) of Torts § 324A (1964), the Jensens gratuitously undertook to render services to Schaffer which the Jensens should have recognized as being necessary for the protection of Beckner. The Supreme Court

adopted the Restatement (Second) of Torts § 324A in *Schmeck v. City of Shawnee*, 232 Kan. 11, Syl. ¶ 4, 651 P.2d 585 (1982).

The Restatement (Second) of Torts § 324A(a) provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

The initial requirement for the application of § 324A(a) is that the defendants undertook, gratuitously or for consideration, to render services to another. See *Gooch v. Bethel A.M.E. Church*, 246 Kan. 663, 669, 792 P.2d 993 (1990). "Without an affirmative act or an agreement, there is no duty owed under § 324A." *P.W. v. Kansas Dept. of SRS*, 255 Kan. 827, 834, 877 P.2d 430 (1994).

In its brief, the estate glosses over the affirmative act requirement for liability under this section and makes a conclusion that the Jensens took affirmative action toward Schaffer and controlled him. The estate's assertion greatly stretches the facts as alleged in the petition and cannot be squared with existing Kansas case law.

In *Burney v. Kansas Dept. of SRS*, 23 Kan. App. 2d 394, 399, 931 P.2d 26 (1997), SRS undertook an investigation of Burney as an accused child abuser as required by law. Although SRS performed an investigation, this court found no evidence whatsoever that SRS performed any affirmative act to render services for Burney or entered into any agreement to do so to create a duty under § 324A.

In *Meyers v. Grubaugh*, 242 Kan. 716, 750 P.2d 1031 (1988), our Supreme Court concluded there was no affirmative action by the defendant and therefore no undertaking upon which to impose liability. The defendant, a State employee, became intoxicated while at work and injured the plaintiff in an automobile collision

after leaving work early. Since there was no evidence the employer had taken charge of or assumed control over the intoxicated employee, § 324A was not applicable since the State did not undertake to render services to the employee.

Even a limited undertaking by a defendant does not give rise to a duty under § 324A.

In *McGee v. Chalfant*, 248 Kan. 434, 806 P.2d 980 (1991), a duty under § 324A was rejected even though there was a limited undertaking by the defendants. Chalfant had been drinking beer at several parties. Cooper and Lett, upon Chalfant's request, took Chalfant from one of the parties to his car. Chalfant was clearly intoxicated at the time. Later, Chalfant injured McGee in an automobile collision. McGee sued Cooper and Lett, claiming liability under § 324A. Our Supreme Court reversed the district court's denial of summary judgment, stating:

> "After reviewing the Kansas case law and cases from other jurisdictions concerning § 324A and the duty to third persons for negligent acts of others, we conclude Cooper and Lett did not owe a duty of care to McGee. Cooper and Lett did not take control of Chalfant or intend to; they only agreed to transport Chalfant to his automobile. We hold this does not constitute such an affirmative act as to amount to the exercise of custody or control over Chalfant.
>
> "The extent of the undertaking should define the scope of the duty. Here, Cooper and Lett agreed to take Chalfant to his automobile. We find no evidence that Cooper and Lett agreed to do anything further, such as see that he got home. Thus, although Cooper and Lett had knowledge Chalfant was intoxicated, they did not undertake a duty to prevent him from driving. Therefore, Cooper and Lett cannot be held liable for the negligent performance of a task they did not agree to assume." 248 Kan. at 442.

In *Hanna v. Huer, Johns, Neel, Rivers & Webb*, 233 Kan. 206, 209, 212, 662 P.2d 243 (1983), two ironworkers, injured when an improperly secured structural steel joist fell during construction of a shopping center, sued the architect. The ironworkers alleged the architect was contractually responsible for safety precautions on the job site and, alternatively, the architect was negligent as to job site safety. The architect appealed the adverse jury verdict. The evidence showed that the architect had no contractual responsibility for job site safety. In addition, the architect did not assume such responsibilities outside the duties imposed by the contract.

Our Supreme Court reversed and remanded for judgment in favor of the architect because although the architect rendered services, they were not to the extent of undertaking responsibility for the safety of third parties. 233 Kan. at 218.

On the other hand,

" ' "[i]n each of the Kansas cases imposing liability under § 324A, it was clear that [the threshold] requirement was met. In *Schmeck v. City of Shawnee*, 232 Kan. 11, 651 P.2d 585 (1982), KCPL agreed to and was hired to render traffic engineering services to the City. In *Ingram v. Howard-Needles-Tammen & Bergendoff*, 234 Kan. 289, 672 P.2d 1083 (1983), the Kansas Turnpike Authority hired Howard-Needles as its consulting engineers to make safety inspections of the turnpike and thus render services to the KTA. In *Cansler v. State*, 234 Kan. 554, 675 P.2d 57 (1984), there was evidence the county agreed with Kansas State Penitentiary officials and other law enforcement agencies to notify these agencies of escapes from the penitentiary. In *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093 (1986), the police were obligated by a general police department order to take certain incapacitated persons into custody." ' " *P.W.*, 255 Kan. at 834.

The Jensens allowed Schaffer to stay at their home for a post-prom party. This in and of itself is not an affirmative act. If an affirmative act is implied or found, it is a limited act at best. Accordingly, without an affirmative act showing that the Jensens exercised custody or control over Schaffer, no duty and liability existed under § 324A.

## PUBLIC POLICY

Finally, in a letter of additional authority, Beckner asserts *Robinson v. Health Midwest Development Group d/b/a Lafayette Regional Health Center*, Mo. App. No. WD 58290 filed March 6, 2001, as persuasive authority to establish public policy as an independent basis for liability in addition to a "special relationship."

In *Robinson*, Felicia Robinson appealed summary judgment in favor of Health Midwest on her negligence claim for personal injuries she sustained from an automobile accident. Robinson alleged that Health Midwest's staff was negligent in part by providing treatment to Verlea Schmidt. Schmidt was given a prescription drug known by the medical staff to cause drowsiness and dizziness but was not warned of these side effects. Ten minutes after leaving

Health Midwest's facility, Schmidt drove, crossed the center line of a roadway, and collided head-on with Robinson's vehicle, causing her injury.

The Missouri Court of Appeals for the Western District of Missouri reversed and remanded the case *not* on the basis of a special relationship, but rather on public policy grounds. The *Robinson* court acknowledged there is no special relationship between a physician and the general public on which to base a duty. However, the court found a duty arose by applying the public policy factors that give rise to a duty cited by the Missouri Supreme Court in *Hoover's Dairy, Inc. v. Mid-America Dairymen*, 700 S.W.2d 426, 431-32 (Mo. 1985).

Based upon an analysis of public policy, Missouri case law, and an analogy to its dramshop act, the Missouri Court of Appeals held that "under a given set of circumstances, a fact finder could find that a physician owed a duty of care to a member of the general public to warn a patient not to drive while under the influence of an intoxicating drug prescribed by the physician."

Kansas case law and public policy, however, is contrary to the position taken by the Missouri Court of Appeals in *Robinson*▌

In *Calwell v. Hassan*, 260 Kan. 769, 770, 925 P.2d 422 (1996), bicyclists were injured when they were struck by a car driven by a motorist who fell asleep. The bicyclists brought an action against a physician who treated the motorist for excessive sleep disorder. The plaintiffs alleged the physician was negligent in failing to warn the patient not to drive. After a lengthy discussion on "special relationships," our Supreme Court held similar to *Robinson* in that no special relationship existed for the physician to warn the motorist not to drive.

In *Calwell*, the motorist admitted in a deposition that with her condition, she would pull over if she got drowsy while driving to

work. The court reasoned the physician's failure to warn not to drive would simply be telling her something she already knew and duty to warn does not arise when the patient already knows of the danger. 260 Kan. at 786-87 (citing *Boulanger v. Pol*, 258 Kan. 289, 307, 900 P.2d 823 [1995]).

Our Supreme Court declined to impose a § 324A duty on physicians to warn a patient of something the patient is already aware of because "such a rule would subject physicians to liability claims from unknown third parties for the acts of patients over which physicians would have no control." 260 Kan. at 787.

Because our Supreme Court found no duty under very similar facts, *Robinson* is not persuasive to establish liability on account of public policy. Moreover, *Robinson's* persuasiveness is diminished because it reached the result by relying on *Hoover's Dairy, Inc.*, a Missouri Supreme Court case, and by analogy to a dramshop statute for which there are no counterparts in Kansas. See *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731 (1985). As a result, the estate's argument fails.

Affirmed.