(240 P.3d 969)
No. 102,608

ROBERT THORNBURG, as SPECIAL ADMINISTRATOR OF THE ESTATE of RYKER J. SCHWEITZER, and KRISTY SCHWEITZER, INDIVIDUALLY and as ADMINISTRATOR for the ESTATE of RYKER J. SCHWEITZER, *Appellants*, v. BRIAN SCHWEITZER, *Defendant*, and THE BREMEN FARMERS MUTUAL INSURANCE COMPANY, *Appellee*.

Opinion filed October 1, 2010.

*William J. Pauzauskie*, of Topeka, for appellant.

*Norman R. Kelly*, of Norton, Wasserman, Jones & Kelly, L.L.C., of Salina, for appellee.

Before RULON, C.J., GREENE and McANANY, JJ.

GREENE, J.: Robert Thornburg, as special administrator of the estate of Ryker J. Schweitzer, and Kristy Schweitzer, Ryker's mother and administrator of the estate (collectively referred to as the administrators), appeal the district court's summary judgment against them on their attempt to garnish Bremen Farmers Mutual Insurance Company (Bremen) for the administrators' default judgment against Ryker's father, Brian Schweitzer, in an action for the wrongful death of 7-year-old Ryker, who was killed by a female mastiff that was part of the family's English Mastiff business operated at their home in Morrill, Kansas. The district court determined that Bremen's policy provided no coverage for the incident, but the court refused to award attorney fees and costs to Bremen under K.S.A. 60-211. Before us in this appeal are the coverage question and the propriety of the court's denial of costs and fees under these circumstances. We affirm the summary judgment against the administrators, but we vacate the order denying costs and attorney fees and remand with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

Kristy and Brian Schweitzer operated an English Mastiff dog business out of their home in Morrill, Kansas. On September 5, 1997, the Schweitzers adopted a son, Ryker, who was 7 years old at the time of the incident leading to his death. Ryker died on July

27, 2004, from a cervical fracture as a result of being mauled by a female mastiff at the Schweitzer home.

At the time of Ryker's death, the Schweitzers were insured by a homeowners' policy adapted for farms, issued by Bremen, and characterized as an "Agri-Pak" policy. Following Ryker's death, Kristy's attorney sent a demand letter to Bremen, alleging that Ryker had been fatally wounded by the family dog and that Brian was negligent in the maintenance of the dog and its kennel and making a demand of $2 million. Bremen assigned the claim to Heartland Adjustment, Inc., an independent adjusting company. Sam Vigare, an employee and independent adjuster for Heartland, investigated the claim. During his investigation, Vigare obtained a copy of a forensic odontology report which indicated that the wounds to Ryker were " 'very probably caused' " by the Schweitzers' female mastiff. Vigare also took a recorded statement from Brian.

On May 6, 2005, Steve Meier, a vice-president and claims manager of Bremen, sent a letter to Brian and Kristy informing them that their policy contained no liability coverage for the negligence claim against Brian because under the terms of their policy, there was no coverage for bodily injury to a resident of their household. Meier advised that if, at some point in the future, they became aware of facts or circumstances that they believed would cause coverage to be provided under the policy, they should notify Bremen for additional review. Meier also noted that "there is a significant question under Kansas law whether Kristy could sue Brian under the facts and circumstances of this incident and/or because of what Brian did or allegedly failed to do."

On June 16, 2006, the administrators filed their wrongful death action against Brian. They claimed that Brian owned the dog that was responsible for causing Ryker's death and specifically alleged that Brian failed to provide a safe place for Ryker to live, failed to exercise control over the dog and warn of the dog's propensities, and was otherwise negligent in his care, housing, and control of the dog. After receiving a copy of the petition and summons, Bremen again notified Brian by letter on July 3, 2006, that there was no coverage available for Ryker's death under the terms of the

policy, and Bremen therefore had no duty to defend Brian. Brian neglected to answer the petition, and a default judgment was granted against him in the amount of $1.5 million.

On February 29, 2008, the administrators filed a request for garnishment of Brian as the judgment debtor and Bremen as the garnishee. Bremen answered, stating that it was not indebted to Brian in any amount. In response, the administrators argued that their claim was covered by the Schweitzers' insurance policy, which contained a business pursuits endorsement for the dog raising/selling business. They further alleged that Bremen had failed to address the business pursuits endorsement in its refusal to defend and had otherwise breached the contractual and fiduciary duties it owed to Brian by "wrongfully, negligently and in bad faith refusing coverage and failing and refusing" to defend, evaluate, and investigate the claim. Finally, the administrators further claimed that the policy was ambiguous and, therefore, should be construed in their favor.

Following a lengthy discovery process, the parties filed competing summary judgment motions. In its motion, Bremen argued that there was no coverage for the administrators' claims under the policy or the business pursuits endorsement. Bremen further alleged that Kansas law does not permit a child to sue a parent for negligence under the present facts. The administrators conversely argued that the business pursuits endorsement to the policy established their right to recover for Ryker's death, and that any ambiguity in the business pursuits endorsement should be construed in their favor. They also alleged that Bremen waived its coverage defenses and was otherwise prevented from denying coverage based on breach of contract, bad faith, and equitable estoppel. Finally, they argued that parental immunity was not applicable.

The district court granted summary judgment in favor of Bremen, finding there was no insurance coverage for the incident and that Ryker's father was entitled to parental immunity. Following this ruling, Bremen sought attorney fees and costs under K.S.A. 60-211, but the district court denied this motion "at this stage." The administrators appeal the summary judgment against them,

and Bremen cross-appeals the denial of its motion for costs and fees.

### DID THE DISTRICT COURT ERR IN GRANTING SUMMARY JUDGMENT TO BREMEN?

The administrators argue that the district court erred in construing and applying Bremen's insurance policy, contending that their claim was covered under the business pursuits endorsement to the policy and that Ryker's father was not entitled to parental immunity under these circumstances. Because we have concluded there was no coverage for the incident under Bremen's policy, we need not discuss the issue of parental immunity.

Our standard of review in a summary judgment case is well established. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 32, 200 P.3d 419 (2009).

An issue of fact is not genuine, however, unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. If a disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact. *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000).

*Overview of Key Policy Provisions*

At the outset of our analysis, we examine the policy provisions that are material to the issue of coverage. The relevant portion of the Bremen "Agri-Pak" policy at issue is Section 7, Coverage T Liability, which provides:

"We promise to pay on behalf of an insured for damages resulting from bodily injury or property damage caused by an occurrence, if the insured is legally obligated. We have the right and duty to defend any suit seeking such damages. We may at our discretion investigate any occurrence and settle any claim or suit seeking such damages."

The policy further provides, however, in relevant part, that "Coverage T-Liability, *does not apply to . . . bodily injury to you or residents of your household.*" (Emphasis added.) The Definitions section of the policy defines the following terms:

"You, Your, Yourself means the person named on the declarations page of the policy and that person's spouse if a resident of the same household. You, Your, Yourself also refers to a partnership, corporation, estate, or trust *as stated on the declarations page.*
. . . .
"Bodily injury means physical injury to a person and caused by an occurrence. It includes required care, loss of services and death resulting from the personal injury.
. . . .
"Insured means you and the following residents of your household:
    "a. your relatives; and
    "b. persons under 21 in the care of those named above." (Emphasis added.)

The declarations page of the policy lists as the insureds only "Brian and Kristy Schweitzer" and does not state that any partnership was insured or otherwise involved.

The Schweitzers' policy also included a separate endorsement entitled "Business Pursuits." It provided: "For additional premium, we cover the business described on the declarations page *conducted by an insured.*" (Emphasis added.) The declarations page lists, *inter alia*, a dog raising/selling operation involving "8 English Mastiff." The business pursuits endorsement specifically amends certain language contained in the policy package, including Section 7, Coverage T and U, Exclusions 2 and 4. The endorsement also provides that liability coverage does not apply to bodily injury or

property damage " 'arising from an insured's business pursuits, unless the business pursuit is described on the declarations page.' "

Obviously, Bremen claims that the "Coverage T Liability" does not apply here because Ryker was an insured and a resident of the Schweitzer household. In contrast, the administrators claim that the business pursuits endorsement provides coverage because the dog that killed Ryker was a part of the family's business specified on the declarations page.

### The District Court's Decision

The district court concluded that the policy was not ambiguous and that the policy provided no coverage, reasoning in part:

"19. The policy at issue states that Coverage T—Liability does not apply to bodily injury to 'you' or the 'residents' of 'your' household. Ryker Schweitzer was an insured under the clear and unambiguous terms of the policy at issue. There is not any coverage under the applicable policy for the Plaintiffs' claims against Defendant. Due to the complete absence of coverage under the policy, Bremen is entitled to judgment as a matter of law, and the Court grants Bremen's Motion for Summary Judgment.

. . . .

"29. Plaintiffs allege that the Business Pursuits endorsement should not be considered an endorsement because the word 'endorsement' is not contained within its text. The Declarations page of the applicable policy lists the Business Pursuits endorsement by [its] form number (AP—3 1-93) under the heading 'Forms Applicable.' Despite the absence of the word 'endorsement,' the Business Pursuits endorsement does indicate that its terms control over other terms in the policy proper. The Business Pursuits endorsement tells the insured that exclusionary language from the main policy is 'amended to read' in a different manner. A plain interpretation of such language necessitates that the language from the main policy be read in conjunction with the Business Pursuits endorsement, in order to ascertain what language is being amended and in what precise way such language is amended.

"30. Plaintiffs contend that the existence of the 'Tara partnership' is highly relevant, and 'Defendant's assertions are prima facie evidence of [Bremen's] actual bad faith.'

"31. The Business Pursuits endorsement modifies portions of the Agri-Pak policy, the exclusion which provides that Coverage T—Liability does not apply to 'bodily injury' to 'you' or residents of 'your' household is clearly unaffected and applies in all instances. While the purchase of the additional coverage afforded by the Business Pursuits endorsement did provide expanded coverage beyond that afforded by just the Agri-Pak policy alone for certain situations, the clear wording of the Bremen policy states—that Coverage T—Liability does not apply

to bodily injury to you or residents of your household. The issue before the Court is whether there is coverage for the unfortunate death of Ryker Schweitzer. The existence of such partnership does not alter or affect the plain meaning of Bremen's policy's terms.

"32. Plaintiffs contend that 'the terms of the policy are ambiguous if Bremen and the insured, Brian Schweitzer, did not believe the language had the same meaning to each party'. The test in determining whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean. *First Financial*, 265 Kan. at 694. Likewise, the fact that an insured claims to have a different subjective understanding of the policy terms does not mean an ambiguity exists, rather the test is what a 'reasonably prudent insured' would understand the language to mean.

"33. Ryker Schweitzer: (1) was the son of Brian and Kristy Schweitzer, (2) was under the age of 21; (3) was in the care of Brian and Kristy Schweitzer; and (4) was a resident of Brian and Kristy Schweitzer's household. Therefore, Ryker Schweitzer was an insured under the Bremen policy. Bremen's policy specifically states that Coverage T—Liability does not apply to the bodily injury to 'you' or the residents' of 'your' household. This exclusion for Coverage T—Liability is unaffected by the Business Pursuits endorsement."

## *Well-Established Principles Governing the Construction of Insurance Policies in Kansas*

Our Supreme Court recently summarized many of the principles governing construction of insurance policies as follows:

" 'The language of an insurance policy, like any other contract, must, if possible, be construed in such way as to give effect to the intention of the parties. [Citations omitted.] In construing a policy of insurance, a court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished. [Citation omitted.]

" 'Because the insurer prepares its own contracts, it has a duty to make the meaning clear. If an insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language; otherwise, the policy will be liberally construed in favor of the insured. [Citations omitted.] If an insurance policy's language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense. [Citation omitted.] In such case, there is no need for judicial interpretation or the application of rules of liberal construction. [Citation omitted.] The court shall not make another contract for the parties and must enforce the contract as made. [Citations omitted.]

" 'However, where the terms of an insurance policy are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail. [Citations omitted.]

" ' "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." [Citation omitted.]

" 'Whether a written instrument is ambiguous is a question of law to be decided by the courts. [Citation omitted.] Courts should not strain to create an ambiguity where, in common sense, there is not one. [Citation omitted.] The test in determining whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean. [Citation omitted.]' [Citation omitted.]" *American Family Mut. Ins. Co. v. Wilkins*, 285 Kan. 1054, 1058-59, 179 P.3d 1104 (2008).

Additionally, we embrace the following tenets of insurance policy construction from a recognized authority:

"In construing an endorsement to an insurance policy, the endorsement and the policy must be read together. The policy remains in full force and effect except as altered by the words of the endorsement. Conversely, the endorsement modifies, to the extent of the endorsement, the terms and conditions of the original insurance contract. Reading all provisions together in an attempt to harmonize the terms is particularly appropriate where the preprinted policy form comes to the insured with the various endorsements attached. The attached endorsements only alter the package policy to the extent specifically called for in explicit provisions of the attachments." 4 Holmes' Appleman on Insurance 2d § 20.1, pp. 153-55 (1998).

### We Construe the Material Policy Provisions in a Manner Identical to the District Court

Turning first to the "T Liability" exclusions, we agree with the district court's conclusion that the exclusion for household residents was clear, unambiguous, and applicable. Our Supreme Court construed similar exclusion language against the insured in *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 732 P.2d 741 (1987). There, a husband fatally shot his wife and was thereafter sued by their son for wrongful death. The insurer under a homeowners' policy refused to defend the husband and filed a declaratory judgment action denying coverage on three grounds, including a policy exclusion for bodily injury to insureds. 240 Kan. at 708. Specifically, the policy excluded from coverage " 'bodily injury to you and any insured.' " 240 Kan. at 713-14. Our Supreme Court ultimately

found that the policy was not ambiguous and clearly excluded coverage for the action brought by the son against his father for the wrongful death of his mother. 240 Kan. at 714.

The exclusion language in the present case, like *Patrons*, is not ambiguous. It is undisputed that Ryker was the Schweitzers' son and was a person under the age of 21 in the Schweitzers' care; therefore, pursuant to the clear policy terms, he was a resident of the Schweitzer household. Under these terms, there was clearly no coverage available to Brian under the policy and, thus, no duty for Bremen to provide Brian with a defense. However, our analysis does not end here.

Administrators suggest that the business pursuits endorsement should be read separately from the policy because there is no incorporation language between the policy and the business pursuits endorsement. Therefore, the administrators contend, Bremen cannot claim that the "resident of a household" exclusion applies to prevent coverage. We disagree. This court must consider the terms of the insurance policy as a whole, without fragmenting the various provisions and endorsements. *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 697, 962 P.2d 515 (1998). A policy endorsement alters only the policy package to the extent specifically called for in the explicit language of the endorsement. See 4 Holmes' Appleman on Insurance 2d § 20.1, pp. 153-54 (1998).

Nothing in the business pursuits endorsement indicates that it replaces or supercedes the general provisions and exclusions set forth in the Agri-Pak policy. Rather, the language used in the business pursuits endorsement merely indicates that certain provisions of the policy package are amended by the business pursuits endorsement. The business pursuits endorsement refers to specific sections of the Agri-Pak policy and contains language which clearly provides that the exclusionary language from other portions of the policy is "amended to read" differently. Additionally, the Agri-Pak policy states: "Definitions for words that have special meaning are shown in 'bold type,' " and the business pursuits endorsement similarly lists and incorporates terms in bold type which have been specifically defined in the Agri-Pak policy. Moreover, the declarations page of the Agri-Pak policy lists the business pursuits doc-

ument by its form number, AP-3 1-93, under the heading "Forms Applicable." A plain reading of the endorsement language reflects that the business pursuits endorsement must be read in conjunction with language from the Agri-Pak policy in order to ascertain precisely what language is amended. Therefore, the original terms *and exclusions* of the Agri-Pak policy control, except for those provisions that are *specifically* amended by the business pursuits endorsement. We reject the administrators' argument that the endorsement creates some ambiguity or should be read independently from the policy package. The unfortunate death of Ryker was the result of bodily injury to a resident of the Schweitzer household and expressly excluded from Coverage T Liability.

*We Examine and Reject Other Arguments of Administrators*

*1. Partnership liability inconsistent with household exclusions*

The administrators also argue that coverage exists for their claim under the business pursuits endorsement because the dog breeding business was being conducted as a partnership. They contend that because partnerships cannot have residents of a household, the exclusion for bodily injury to residents of the household does not apply.

At the outset, we note that the administrators' arguments based on the fact of partnership liability are self-defeating. First, the declarations page fails to list any such partnership as an additional insured, as required to encompass the partnership as an insured under the definitions governing the policy. Second, the wrongful death suit that gave rise to the garnishment action against Bremen did not name any such partnership as a defendant, and there is no judgment against the partnership. Third, there is no indication that any execution efforts were made against partnership assets, and the garnishment of Bremen did not include any reference to any amounts that may be owed by Bremen to such partnership. Finally, and consequently, the partnership arguments simply have no basis in fact or law. Despite this conclusion, we analyze and reject on their merits the administrators' arguments based on this specious framework.

In support of their argument, the administrators cite *Sears v. Wilson*, 10 Kan. App. 2d 494, 704 P.2d 389 (1985). In that case, the court held that where an uninsured motorist policy issued to a corporation includes as an insured any family member, the language is a nullity. 10 Kan. App. 2d at 495, 497. The administrators' reliance on *Sears* is misplaced. In the present case, the named insureds on the policy were clearly and unambiguously listed as "Brian and Kristy Schweitzer." Despite the language in the policy that "You, Your, Yourself also refers to a partnership, corporation, estate, or trust *as stated on the declarations page*," nowhere in the policy is any partnership, corporation, estate, or trust named as an insured, nor is any partnership stated on the declarations page.

We reject the administrators' argument that partnership liability negates applicability of the exclusion for bodily injury to household residents.

### 2. Negligent procurement

The administrators further claim that Bremen is estopped from denying coverage to Brian because it knew that the Schweitzers were in a dog raising/selling business partnership but did not ask them to list the partnership on their application. We disagree. A duty to defend cannot be predicated on a claim that the insurance agent was negligent in procuring a proper policy. *Jones v. Reliable Security, Inc.*, 29 Kan. App. 2d 617, 630-31, 28 P.3d 1051, *rev. denied* 272 Kan. 1418 (2001).

### 3. Breach of the duty to defend

Finally, although the administrators characterize some of their claims as a breach of the duty to defend, they do not suggest any facts that would give rise to a "potential of liability," even if remote. See *MGM, Inc. v. Liberty Mut. Ins. Co.*, 253 Kan. 198, 202, 855 P.2d 77 (1993). The duty to defend rests primarily on the possibility that coverage exists, and the possibility of coverage must be determined by a good-faith analysis of all information the insurer may know or could have reasonably ascertained. If ambiguities in coverage, including exclusionary clauses, are judicially determined against the insurer, the ultimate result controls the insurer's duty to defend. *Steinle v. Knowles*, 265 Kan. 545, 554, 961 P.2d 1228

(1998). Granted, the insurer must look beyond the effect of the pleadings and consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend, but the administrators suggest no such additional facts or reasonably discoverable facts that would support coverage under the policy package. See *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 32, 200 P.3d 419 (2009).

Here, Bremen launched an investigation of the claim and when it ultimately notified Brian and Kristy that there was no coverage available under the policy, Bremen advised that if they or their attorneys became aware of facts or circumstances that would cause coverage to be provided under the policy, they should notify Bremen for additional review. There is no indication in the record that any additional facts were ever alleged by Brian and Kristy. The administrators have failed to adequately support any factual predicate for their claim of breach of the duty to defend.

## DID THE DISTRICT COURT ERR IN DENYING BREMEN'S MOTION FOR COSTS AND FEES?

Bremen argues in its cross-appeal that the district court erred in denying its motion for attorney fees and costs pursuant to K.S.A. 60-211. Specifically, Bremen claims that the administrators violated K.S.A. 60-211 by causing Bremen to incur substantial costs and attorney fees in defending claims that were not warranted by existing law and were presented for the improper purpose of harassing Bremen, and otherwise causing unnecessary delay and increasing the cost of litigation.

Prior to ruling on Bremen's attorney fees motion, the court inquired of counsel whether it would lose jurisdiction if it took the motion under advisement while waiting for the appellate court's decision on the summary judgment ruling. Counsel opined that by taking the motion under advisement, the court would essentially be denying the motion but urged the court to make a definitive ruling. In denying the motion, the court indicated that it would rather

"have an appellate review of what I've done be made before I ruled on the issue of attorney fees in this case, but I'm probably—I am in agreement with what the attorneys are probably telling me, and so I better make a decision on this.

"So I think what I'm going to do at this time, I'm going to deny the motion for attorney fees and costs. I—The Court is of the opinion that based on the, its familiarity with this case, that the facts and stuff are—do not rise or are not egregious enough to warrant the assignment of attorney fees. So, therefore, the Court denies it at this particular point, or this particular stage."

Imposition of sanctions pursuant to K.S.A. 60-211 is discretionary, and the court's ruling on sanctions will not be disturbed on appeal absent an abuse of discretion. *Wood v. Groh*, 269 Kan. 420, 429, 7 P.3d 1163 (2000). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Schuck v. Rural Telephone Service Co.*, 286 Kan. 19, 24, 180 P.3d 571 (2008).

K.S.A. 60-211 mandates that every pleading, motion, and other paper signed by an attorney constitutes a certificate that, among other things: (1) the document is not being presented for an improper purpose; (2) the subject matter of the document is warranted by existing law or by a nonfrivolous argument for modification of current law; (3) there is, or there is likely to be, evidentiary support for the factual contentions; and (4) the denials of factual contentions are warranted by evidence or based on lack of information. K.S.A. 60-211(b)(1)-(4).

Here, Bremen argues that the administrators clearly and egregiously violated the mandates of K.S.A. 60-211. Summarizing these violations, Bremen alleges:

1. The administrators served excessive interrogatories in violation of Supreme Court Rule 135 (2009 Kan. Ct. R. Annot. 221).
2. The administrators served interrogatories on Bremen that were totally irrelevant to any possible issue in the case, including inquiries regarding Bremen's place of birth, social security number, driver's license number, total damages claimed, all medicine purchased or used, whether Bremen consumed alcoholic beverages, all doctors consulted, all expenses incurred in connection with the injuries suffered, all prior illnesses and disabilities, all prior claims for benefits under any policy of insurance, and details of all repairs made to the vehicle "in which you were riding."
3. The administrators failed to respond to Bremen's counsel's letter requesting any and all legal authority that would serve as a basis for the claims made in the administrators' lawsuit.

4. The administrators issued a notice of subpoena duces tecum to counsel for Bremen, even though there was little or no arguable basis for a deposition of counsel. The notice was quashed by the court, demonstrating that the notice was unwarranted.
5. The administrators filed a summary judgment motion of 95 pages with exhibits consisting of an additional 350 pages, much of which required Bremen to respond to "nonsensical," "crazy," and irrelevant arguments and statements, including "parallel universe" arguments.
6. The administrators prosecuted a claim that was clearly precluded by an unambiguous policy exclusion and that was not warranted by existing law or by a nonfrivolous argument for modification of current law.

Prior to its amendment in 2010, K.S.A. 60-211 provided that if a pleading is signed in violation of the statutory mandates, "the court . . . *shall* impose upon the person who signed it or a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading . . . including reasonable attorney fees." (Emphasis added.) See L. 2010, ch. 135, sec. 78.

Although the district court ultimately denied the motion for fees, we are left to speculate as to the reasons for the denial. The record contains no indication that the district court analyzed Bremen's claims to determine whether K.S.A. 60-211 had in fact been violated. In the event that one or more violations of the statutory mandate were established, the court failed to impose *any* sanction in apparent contravention of the statutory directive. The record is also silent on any basis for the denial, other than the peculiar statement that Bremen's motion was "denied at this particular stage." Finally, the record is silent on whether the district court truly considered the factors that our appellate courts have indicated should have a bearing on such a motion, including the "*Groh* factors."

In *Groh*, our Supreme Court held that K.S.A. 60-211 does not require a district court to award monetary sanctions for every violation. 269 Kan. at 430. Kansas courts consider the following factors when deciding if a violation occurred and what sanction should be imposed: (1) whether the improper conduct was willful or negligent; (2) whether the conduct was part of a pattern or an isolated incident; (3) whether the entire pleading was infected; (4) whether

the person has engaged in similar conduct in other litigation; (5) whether there was intent to injure; (6) what effect the conduct had on litigation time or expense; (7) whether the responsible person is an attorney; (8) what is needed to deter the litigant, given the litigant's financial resources, from the same conduct in the future; and (9) what is necessary to deter future litigants from the same conduct. 269 Kan. at 431.

Because it appears that the district court has not made the necessary analysis, has provided no findings that would serve to support meaningful appellate review, has not stated any basis whatsoever for the denial of a sanction, has not considered the *Groh* factors, and seems to have believed that there would be some later "stage" for a more complete review and determination of Bremen's K.S.A. 60-211 motion, we must vacate the denial and remand for further proceedings not inconsistent with this opinion.

Affirmed in part, vacated in part, and remanded with directions.