NOT DESIGNATED FOR PUBLICATION

No. 119,208

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CoreFirst Bank & Trust f/k/a Commerce Bank & Trust,
*Appellee*,

v.

Timothy Degginger,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; Larry D. Hendricks, judge. Opinion filed November 27, 2019. Affirmed.

*Eric Kjorlie*, of Topeka, for appellant.

*R. Patrick Riordan*, of Riordan, Fincher & Beckerman, P.A., of Topeka, for appellee.

Before Schroeder, P.J., Buser and Atcheson, JJ.

Atcheson, J.: Defendant Timothy Degginger appeals the decision of the Shawnee County District Court granting summary judgment to Plaintiff CoreFirst Bank & Trust in this mortgage foreclosure action and rulings awarding the bank attorney fees. We find no error in those determinations and affirm.

Degginger owns a house on a lot in Topeka that has been in his family for several generations. Degginger lives elsewhere, and the property is not considered his homestead. In 2004, he received a line of credit from CoreFirst Bank, then known as Commerce

Bank and Trust, and mortgaged the property as collateral. About seven years later, Degginger sought and received a loan from the bank for his foundry business, for which he signed a promissory note. The bank retained the mortgage on the property as security for that loan.

Degginger fell into arrears on the loan, and CoreFirst Bank filed a petition in 2015 to foreclose on the mortgage. The bank followed with a motion and supporting memorandum and exhibits seeking summary judgment. The district court granted the motion. The case then took various procedural twists and turns when Degginger filed a motion to dismiss, arguing he apparently didn't own a full fee-simple interest in the property and the bank purportedly withheld that information from him despite making the loans to him and taking a mortgage on the property. Based on the record evidence, the district court expressed concern that the judgment was sufficiently supported and directed the bank to review the chain of title and to provide notice to anyone with a potential interest in the property. The district court also entered an order requiring Degginger to pay attorney fees as provided in the loan documents. Degginger filed an appeal that this court dismissed for lack of a final judgment, since the bank hadn't completed its investigation of the property's title history.

CoreFirst Bank then filed an amended petition identifying additional parties with potential interests in the property. Degginger responded with an answer and a counterclaim for fraud. The bank filed a second motion for summary judgment with an expanded memorandum and evidentiary record seeking foreclosure on its petition and dismissal of Degginger's counterclaim. The documents CoreFirst Bank presented traced the chain of title to the property from Degginger's grandparents to various relatives and ultimately to him, establishing that the full fee-simple title had been reunified when his sister died and he took her interest by right of survivorship. In response to the second summary judgment motion, Degginger did not dispute the documents and other evidence regarding the transfers of various interests in the property or that he ultimately came into

2

possession of all of those interests. The district court entered summary judgment for CoreFirst Bank on the counterclaim, prompting various motions from Degginger, all of which were denied. Degginger again tried to appeal, but this court again denied the appeal as premature because the district court hadn't ruled on CoreFirst Bank's request for foreclosure.

The district court then entered judgment for CoreFirst Bank and issued a foreclosure order. Degginger filed several motions challenging the judgment; the district court denied them. And the district court granted CoreFirst Bank's motion for additional attorney fees. Degginger has now perfected an appeal that we consider.

On appeal, Degginger unleashes a diffuse collection of arguments premised on the inability of the district court to find in the bank's favor either because he didn't hold the full fee-simple title or because a tax lien somehow precluded foreclosure. He reiterates his assertion that bank officers involved in the loan transactions knew about those purported obstacles and somehow committed fraud by failing to disclose them. In turn, he weaves those arguments into barriers to the foreclosure statutes and under the holder in due course provisions of the Uniform Commercial Code. He further suggests that the fee-simple title either had not been or could not be reunited in him. Degginger also challenges the district court's orders granting attorney fees to CoreFirst Bank.

In reviewing a grant of summary judgment, we apply the same standard as the district court. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018). A party seeking summary judgment has the obligation to show, based on appropriate evidentiary materials, there are no disputed issues of material fact and judgment may, therefore, be entered in its favor as a matter of law. 308 Kan. at 935; *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). In essence, the movant argues there is nothing for a jury or a trial judge sitting as fact-finder to decide that would make any difference. In ruling on a summary judgment request, the district court must view the

3

evidence most favorably to the party opposing the motion and give that party the benefit of every reasonable inference that might be drawn from the evidentiary record. *Trear*, 308 Kan. at 935-36; *Shamberg*, 289 Kan. at 900. So CoreFirst Bank had to satisfy that standard to obtain summary judgment on its foreclosure petition and on Degginger's counterclaim for fraud.

The uncontroverted facts CoreFirst Bank submitted in support of its second motion for summary judgment established that Degginger held the full fee-simple title to the mortgaged property and had since his sister's death in 1999. Degginger tries to call that evidence into question because a report from a title company suggested a possible kink in the chain of title because his grandfather and grandmother held the property as tenants in common rather than as joint tenants with a right of survivorship. But the actual documents CoreFirst Bank produced (and Degginger didn't dispute) demonstrate the title company's report was abundantly cautious in its concern, though the concern proved unfounded upon inspection of the chain of title between Degginger and his grandparents.

Degginger's arguments pivot on the erroneous factual premise that he had less than a full fee-simple interest in the property. So they fail for that reason. Degginger owned the property in fee simple. And, in turn, the facts presented a fairly standard foreclosure action, notwithstanding his efforts to suggest impediments making it otherwise and his serial motions and attempts to appeal that delayed the procedural progression in this case.

Degginger also suggests a tax lien on the property fouled up foreclosure or somehow implicated the bank officers in nefarious plotting in extending the loans to him. Neither assertion is correct. Some (and, perhaps, most) tax liens would be paid as a priority from the proceeds of a foreclosure sale. Their existence, however, would not preclude a foreclosure sale. Likewise, a bank making a loan and taking real property subject to a tax lien as collateral, simply reduces the amount it might recover in a

4

foreclosure action. By doing so, the bank would impose no particular detriment on the party obtaining the loan.

Cutting to the quick here, the undisputed facts support the district court's summary judgment rulings permitting CoreFirst Bank to foreclose on the property and denying Degginger's claim for fraud.

Degginger also challenges the district court's orders granting attorney fees to CoreFirst Bank. The promissory note for the 2011 loan permits CoreFirst Bank to recover "reasonable costs incurred in the collection" of any delinquencies and specifically identifies attorney fees as a recoverable cost.

The district court entered the first order after it granted the original motion for summary judgment and awarded the bank $9,044 in attorney fees and $875.68 in costs. The district court cited provisions of the loan contract permitting the bank to recover attorney fees and expenses in a collection action. As to this order, Degginger disputes neither CoreFirst Bank's contractual right to fees and expenses nor the reasonableness of the amount the district court allowed. Rather, Degginger contends the district court erred because the bank ultimately asked the district court to hold up and to allow further proceedings after he argued he owned less than a full fee-simple title to the property. So Degginger submits CoreFirst Bank wasn't really entitled to attorney fees for the work its lawyers did leading to the first judgment, since the bank essentially abandoned that judgment. That, of course, ignores the reason for the bank's action—Degginger's specious argument about his ownership interest in the property. The district court did not err in ordering Degginger to pay those attorney fees and costs.

At the conclusion of the case in the district court, CoreFirst Bank filed a second motion for about $16,900 in attorney fees for the remainder of the work its lawyers had done. Again, Degginger did not dispute the reasonableness of the amount. The district

5

court granted the motion in the amount requested, finding the bank to be entitled based on the contractual provisions of the loan agreement and as a matter of statutory right under K.S.A. 2018 Supp. 60-211(c), permitting monetary sanctions for frivolous litigation conduct. CoreFirst Bank plainly had a contractual right to reasonable attorney fees for its ongoing collection efforts. That alone is legally sufficient to support the second order granting CoreFirst Bank the additional attorney fees it requested. We affirm the award under the terms of the promissory note.

The district court additionally relied on K.S.A. 2018 Supp. 60-211(c) to impose CoreFirst Bank's attorney fees as a sanction against Degginger for pursuing claims that lacked legal merit and were interposed to unnecessarily delay or increase the financial burden of the litigation. See K.S.A. 2018 Supp. 60-211(b) (identifying grounds warranting sanctions). In awarding statutory sanctions, a district court should consider a set of factors: (1) whether the improper conduct was willful or negligent; (2) whether it was part of a pattern of activity or an isolated event; (3) whether it infected the entire pleading or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) whether it was intended to injure; (6) what effect it had on the litigation process in time or expense; (7) whether the responsible person is trained in the law; (8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and (9) what amount is needed to deter similar activity by other litigants. *Wood v. Groh*, 269 Kan. 420, 431, 7 P.3d 1163 (2000) (cataloging factors considered in imposing sanctions under K.S.A. 60-211).

Here, the district court obviously considered the *Wood* criteria as reflected in its comments from the bench in ruling on the motion for attorney fees. Although all of the factors weren't necessarily applicable, the district court highlighted Degginger's persistent and insistent reliance on his misconceived argument that he owned less than a full fee-simple interest in the property as a valid ground against foreclosure. The district court

6

found that Degginger's obdurate repetition of that argument in serial motions in the face of contrary evidence and rulings justified sanctions under K.S.A. 2018 Supp. 60-211(c) and awarded the attorney fees CoreFirst Bank requested as an appropriate penalty. The district court also pointed out that Degginger has a law degree and, therefore, should have understood the impermissible character of the principal course of defense in this case.

Whether a district court has the authority to impose sanctions presents a question of law, but the decision to sanction within recognized authority and the amount of a particular sanction are matters of judicial discretion and will be reversed on appeal only for an abuse of that discretion. See *Unruh v. Purina Mills*, 289 Kan. 1185, 1200, 221 P.3d 1130 (2009); *Thornburg v. Schweitzer*, 44 Kan. App. 2d 611, 625, 240 P.3d 969 (2010). A district court exceeds that broad grant of discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011). Having reviewed the record, we see no abuse of discretion, and Degginger has not identified something falling outside those boundaries.

Affirmed.