No. 126,874

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

B.H., Special Administrator of the Estate of C.W.H.,
a Minor,
and
B.H., Individually and for and on Behalf of
All the Surviving Heirs-at-Law of C.W.H., a Minor,
*Appellees*,

v.

P.B. and L.B.,
*Defendants*,
and
UPLAND MUTUAL INSURANCE,
*Appellant*.

SYLLABUS BY THE COURT

1.

Appellate courts apply a bifurcated standard of review to garnishment orders to determine whether the district court's findings of fact are supported by substantial competent evidence and whether those findings are sufficient to support the district court's conclusions of law. An appellate court exercises unlimited review over the district court's conclusions of law and, when the facts are undisputed, need not review the district court's factual findings.

2.

Like appellate review of any other contract or written instrument, appellate courts exercise unlimited review to interpret the terms of an insurance policy which must, when possible, be construed to give effect to the parties' intentions. If an insurance policy's language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense.

1

3.

In a garnishment proceeding, the judgment creditor stands in the shoes of the judgment debtor to enforce only what the debtor could enforce.

4.

Garnishment proceedings do not place the judgment creditor in a more favorable position to enforce a claim—including an insurance claim—against the garnishee than the judgment debtor for the same cause of action.

5.

A garnishment proceeding does not create contractual privity between a judgment creditor and the garnishee. A judgment creditor seeking to garnish a judgment debtor's insurance provider—when the judgment creditor is not in privity of contract with the insurer and is not an intended third-party beneficiary of the insurance policy—may only recover from the insurer to the extent the insured judgment debtor could recover.

Appeal from Bourbon District Court; ANDREA PURVIS, judge. Submitted without oral argument. Opinion filed August 16, 2024. Reversed and remanded with directions.

*Samuel A. Green*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellant.

*Gregory S. Diehl,* of Ralston, Pope & Diehl, L.L.C., of Topeka, for appellee.

Before HURST, P.J., GREEN and ATCHESON, JJ.

HURST, J.: Mother's toddler tragically died from drowning in a pond at the child's foster parents' home. Mother sought damages from the foster parents, alleging they negligently caused her child's death. The district court found one of the foster parents—P.B.—80% at fault for her child's death and awarded Mother damages of $320,000, comprised of $120,000 for the mother's survivor claim and $200,000 for her wrongful

death claim. Mother filed this garnishment proceeding against the foster parents and their homeowners insurer, Upland Mutual Insurance, seeking an order that Upland Mutual pay the judgment. Upland Mutual disclaimed coverage, arguing the foster parents' homeowners insurance policy excluded coverage for her child's death. The district court agreed in part, finding no coverage for Mother's survivor claim but finding the homeowners insurance policy covered Mother's wrongful death claim because Mother was not an insured under the policy.

Upland Mutual appeals the district court's garnishment order for Mother's wrongful death claim. This court agrees the district court erred in finding the insurance policy covers Mother's wrongful death claim. The district court's garnishment order against the insurer is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

P.B. and L.B. were licensed foster parents who received Mother's child, C.W.H., as a foster placement in December 2015 when C.W.H. was about one month old. In August 2017, when C.W.H. was about 23 months old, he drowned in a tragic accident in a fishpond on the foster parents' property when only P.B. was home. At the time of C.W.H.'s death, Mother had been working on her reintegration plan and C.W.H. was spending five nights a week with Mother.

The foster parents were insured under a homeowners insurance policy issued by Upland Mutual. Their policy contained the following provisions relevant to this appeal:

**"DEFINITIONS**

_____


"1. The words 'you' and 'your' mean the person or persons named as the insured on the 'declarations'. This includes 'your' spouse if a resident of 'your' household.

　　　. . . .

"3. 'Bodily injury' means bodily harm to a person and includes sickness, disease, or death. This also includes required care and loss of services.

　　　. . . .

"7. 'Insured' means:

　　　a 'you';

　　　b. 'your' relatives if residents of 'your' household;

　　　c. persons under the age of 21 residing in 'your' household and in 'your' care or in

　　　the care of 'your' resident relatives . . . .

　　　. . . .

"12. 'Occurrence' means an accident, including repeated exposures to similar conditions, that results in 'bodily injury' or 'property damage' during the policy period.

　　　. . . .

**"LIABILITY COVERAGES**

_____


**"PRINCIPAL COVERAGES—LIABILITY AND MEDICAL PAYMENTS TO OTHERS**

**"Coverage L—Personal Liability—**'We' pay, up to 'our' 'limit', all sums for which an 'insured' is liable by law because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies. 'We' will defend a suit seeking damages if the suit resulted from 'bodily injury' or 'property damage' not excluded under this coverage. 'We' may make investigations and settle claims or suits that 'we' decide are appropriate. 'We' do not have to provide a defense after 'we' have paid an amount equal to 'our' 'limit' as a result of a judgment or written settlement.

　　　. . . .

**"EXCLUSIONS THAT APPLY TO LIABILITY COVERAGES**

"'We' do not pay for 'bodily injury' or 'property damage' resulting from one or more of the following excluded 'occurrences', regardless of other causes or 'occurrences' that contribute to or aggravate the 'bodily injury' or 'property damage' whether such causes or 'occurrences' act to produce the 'bodily injury' or 'property damage' before, at the same time as, or after the excluded 'occurrence'.

. . . .

"2. **Additional Exclusions That Apply Only to Coverage L**—Coverage L does not apply to:

a. 'bodily injury' to 'you', and if residents of 'your' household, 'your' relatives and persons under the age of 21 in 'your' care or in the care of 'your' resident relatives."

Upland Mutual disclaimed liability for the accident and notified P.B. and L.B. of this refusal to provide coverage and defense, explaining in part:

"The investigation undertaken and completed by Upland Mutual confirmed that [C.W.H.] was under the age of 21 (he was approximately age 22 months old at the date of this incident), was residing in your household and was in your care. Both of you are insureds under this policy. [C.W.H.] was also an insured under the policy. Pursuant to the exclusions outlined above, there isn't any liability coverage available for a bodily injury/wrongful death claim of one insured resident of your household against another insured resident of your household."

Mother sued numerous defendants—including P.B. and L.B.—alleging damages from C.W.H.'s death. After a bench trial, the district court found that P.B.'s negligence in failing to adequately supervise C.W.H. caused his death and apportioned P.B. 80% of the fault. The district court awarded Mother $150,000 in noneconomic damages on her survivor claim under K.S.A. 60-1801 et seq. and $250,000 in damages on her wrongful death claim under K.S.A. 60-1901 et seq. The district court determined that because it assigned P.B. 80% of the fault in C.W.H.'s death, he was liable for $320,000 of the total

judgment—$120,000 for Mother's survivor claim and $200,000 for her wrongful death claim.

After winning that judgment, Mother filed this action for garnishment against Upland Mutual, P.B.'s homeowners insurer, in the amount of the judgment against P.B. Upland Mutual denied liability, claiming P.B.'s homeowners insurance policy did not provide coverage for the judgment. The district court partially agreed with both parties. The district court found "the resident exclusion of the Policy precludes any coverage for the survivor claim asserted by plaintiff" because C.W.H. "was a resident of the [foster parents'] household as defined under the policy." However, the district court also concluded "there should be coverage for [P.B.]'s proportional share of fault on the wrongful death claim under the Policy because the claim benefits C.W.H.'s heir-at-law," who "was not a resident of the [foster parents'] home." The district court therefore ordered Upland Mutual to pay Mother $200,000, which represents P.B.'s proportional share of fault on her wrongful death claim.

Upland Mutual appealed the district court's garnishment order.

DISCUSSION

The only issue on appeal is whether the district court erred in entering a garnishment order against Upland Mutual for Mother's wrongful death judgment against P.B. "Garnishment is a procedure whereby the wages, money or intangible property of a person can be seized or attached pursuant to an order of garnishment issued by the court under the conditions set forth in the order." K.S.A. 2023 Supp. 60-729(a).

Generally, this court applies a bifurcated standard of review to garnishment orders to determine whether the district court's findings of fact are supported by substantial competent evidence and then whether those findings are sufficient to support the court's

6

conclusions of law. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). But when the facts are undisputed, as they are here, this court need not review the district court's factual findings and can proceed to the second step to review the district court's conclusions of law de novo. 309 Kan. at 190-91. This court exercises unlimited review to interpret and determine the legal effect of a contract, and its review is "'unaffected by the lower courts' interpretations or rulings.'" *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018) (quoting *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 [2016]).

*The District Court Erred in Finding the Foster Parents' Homeowners Insurance Policy Provided Coverage for the Judgment on Mother's Wrongful Death Claim*

After receiving a judgment against P.B. for the wrongful death of her child, Mother became a creditor with P.B. owing Mother the debt. Mother sought to enforce payment of the judgment debt by garnishing P.B.'s homeowners insurer, Upland Mutual. In a garnishment proceeding, a creditor such as Mother can "stand[ ] in the shoes of the debtor" to enforce judgments owed to the debtor but only to the extent the debtor could enforce the same judgment. *Geer*, 309 Kan. at 191. This means that if the Upland Mutual homeowners insurance policy provides coverage for the judgment that P.B. could enforce, then Mother can stand in P.B.'s shoes and demand that Upland Mutual pay her instead of P.B. See *Granados v. Wilson*, 317 Kan. 34, 53, 523 P.3d 501 (2023) (creditor stands in the shoes of the debtor); *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 22, 152 P.3d 34 (2007) (". . . a judgment creditor may not attach property that does not legally belong to the judgment debtor"). The district court found the Upland Mutual policy provided coverage for Mother's wrongful death judgment and therefore issued its garnishment order. This court must review the policy anew—without deference to the district court's interpretation—to determine whether the policy provides coverage for Mother's judgment against P.B.

This court interprets the terms of an insurance policy just as it would any other contract and, when possible, construes insurance policies "'to give effect to the intention of the parties.'" *Geer*, 309 Kan. at 192. However, because the insurer typically prepares its own contracts, "'it has a duty to make the meaning clear,'" and "'[i]f the insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language; otherwise, the policy will be liberally construed in favor of the insured.'" 309 Kan. at 192. If there is no ambiguity in the policy terms—including any limitation or restrictions—the language will be "taken in its plain, ordinary, and popular sense." 309 Kan. at 192.

The Upland Mutual policy covers personal liability as follows:

"'We' pay, up to 'our' 'limit,' all sums for which an 'insured' is liable by law because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies. 'We' will defend a suit seeking damages if the suit resulted from 'bodily injury' or 'property damage' not excluded under this coverage."

This fairly broad coverage provision is limited by a separate provision that states personal liability coverage "does not apply to: a. 'bodily injury' to 'you', and if residents of 'your' household, 'your' relatives and persons under the age of 21 in 'your' care . . . ." The policy defines bodily injury as "bodily harm to a person and includes sickness, disease, or death," and "[t]his also includes required care and loss of services." The plain and unambiguous policy language excludes from coverage bodily injuries, including death, to persons under the age of 21 that occurred while the injured was in the care of the insured and a resident of their household.

Although the parties do not dispute that C.W.H. was under the age of 21, in the insureds' care, and a resident of the insureds' home at the time of his death, Upland Mutual appears to have read the disputed exclusion provision two different ways. In its

8

letter disclaiming coverage, Upland Mutual based its denial on C.W.H.'s status as a person under age 21 in the care of the insureds who was also a resident of the home and thus himself an insured. Upland Mutual explained that because C.W.H. "was also an insured under the policy," the exclusion prohibited a "claim of one insured resident of your household against another insured resident of your household." However, in its appellate brief, Upland Mutual states the exclusion at issue "applies regardless" of whether C.W.H. resided with the insureds "because he was under the care of the [insureds] at the time of the accident." Upland Mutual argues "[t]he resident exclusion excludes from coverage claims for 'bodily injury' to a resident of the insured household *and* to persons under the ages of 21 in the insureds' care." (Emphasis added.) The district court based its determination on C.W.H.'s status as an insured—adopting Upland Mutual's interpretation in its coverage letter. On appeal, this court need not agonize over the correct interpretation of the provision because the parties do not dispute that C.W.H. resided with the insureds and thus met this definition under either interpretation.

Mother argues her wrongful death claim is not excluded from coverage—despite the clear, unambiguous policy language to the contrary—because Mother "was not an insured, she was not a resident, she was not a relative, and she was not in P.B. or L.B.'s care." Essentially, Mother argues the policy exclusion applies to wrongful death judgments only if *the person seeking to collect the judgment* (in this case Mother) satisfies the elements of the exclusion provision. The district court agreed with this argument, explaining:

> "The wrongful death claim benefits C.W.H.'s heir-at-law, who was not a resident of the [Defendant's] home. The Court concludes that this distinguishes the cases cited by Garnishee from the present case. The Court concludes that there should be coverage for [P.B.'s] proportional share of fault on the wrongful death claim under the Policy because the claim benefits C.W.H.'s heir-at-law."

9

The district court correctly notes that the cases Upland Mutual relied on share a factual distinction from this case. In those cases, the persons seeking benefits under the insurance policy satisfied the elements of the respective exclusion provision in that they were insureds or related to the insureds. See *Patrons Mut. Ins. Ass'n. v. Harmon*, 240 Kan. 707, 732 P.2d 741 (1987) (minor seeking damages under a wrongful death action against his father for the death of the minor's mother); *Thornburg v. Schweitzer*, 44 Kan. App. 2d 611, 240 P.3d 969 (2010) (deceased minor's mother sought damages against her husband, the deceased minor's father, for their son's death); *Mauch v. Mauch*, No. 92,842, 2005 WL 1805200 (Kan. App. 2005) (unpublished opinion) (deceased minor's parents sought damages against the deceased minor's paternal grandparents, with whom they were living at the time of the minor's accidental death). For example, in *Thornburg*, a panel of this court interpreted a similar homeowners insurance policy exclusion when a mother sought recovery from her own homeowners policy in a wrongful death action against her husband for negligently causing their son's death. 44 Kan. App. 2d at 613. The couple's homeowners insurance policy stated that coverage did "'not apply to . . . bodily injury to you or residents of your household.'" 44 Kan. App. 2d at 617. Their policy further provided that "'[i]nsured means you and the following residents of your household: . . . your relatives; and . . . persons under 21 in the care of those named above.'" 44 Kan. App. 2d at 617. The panel agreed with the insurer that there was no coverage for the wrongful death action under the couple's policy:

> "The exclusion language in the present case . . . is not ambiguous. It is undisputed that [the deceased minor] was the [couple's] son and was a person under the age of 21 in the [couple's] care; therefore, pursuant to the clear policy terms, he was a resident of the [couple's] household. Under these terms, there was clearly no coverage available to [the father] under the policy . . . ." 44 Kan. App. 2d at 621.

Similarly, in *Patrons*, a minor son filed a wrongful death action against his father for causing the death of his mother. 240 Kan. at 707. The father requested that his homeowners insurer defend him against the wrongful death action, but the policy

10

excluded from coverage bodily injury "'which is expected or intended by the insured'" and "'bodily injury to you and any insured within the meaning'" of the definition of insured. 240 Kan. at 713-14. The court found the exclusion unambiguous and determined that coverage did not apply to "bodily injury or death which is expected or intended by the insured" or "bodily injury or death to any insured," and did not compensate "any *insured* for bodily injury or death to an insured." (Emphasis added.) 240 Kan. at 714.

Mother argues that because she is not an insured under the Upland Mutual policy, the holdings in cases like *Thornburg* and *Patrons* are distinguishable and inapplicable. While this case is indeed distinguishable from those cases, that factual distinction does not alter the legal principles or analysis. First, Mother has not argued that she is entitled to coverage of her claim as a party to, or intended third-party beneficiary of, the Upland Mutual policy, and she only seeks payment through garnishment. Mother's garnishment action does not create contractual privity between her and Upland Mutual. See *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, Syl. ¶ 8, 453 P.3d 304 (2019) ("Privity of contract is that connection or relationship existing between two or more contracting parties. Privity between the plaintiff and the defendant with respect to the subject of the lawsuit is essential to the maintenance of any action on a contract."); *M & I Marshall & Ilsley v. Higdon*, 63 Kan. App. 2d 668, 677, 536 P.3d 898 (2023) ("A garnishment action alone does not create privity of contract between a garnishee and a garnisher."). Mother, as judgment creditor and garnisher, may only seek payment from Upland Mutual to the extent such payment is owed to P.B. as the judgment debtor and insured. *Ray v. Caudill*, 266 Kan. 921, 924, 974 P.2d 560 (1999) ("In a garnishment proceeding, the creditor . . . takes the place and stands in the shoes of its debtor . . . taking only what [the debtor] could enforce against the third-party garnishee.").

When the policy does not provide coverage for P.B.'s claim, Mother, as P.B.'s judgment creditor, likewise cannot recover.

11

> "'Proceedings in garnishment do not change the legal relations and rights existing between the defendant and the garnishee, nor place the plaintiff in a more favorable position for the enforcement of a claim against the garnishee than would be the defendant in an action brought by him for the same cause; nor can anyone be held in such proceedings to the payment of a liability which the defendant could not himself enforce because of existing equities and set-offs.'" *LSF Franchise REO I*, 283 Kan. at 22.

So, even if this court agreed with Mother that the bodily injury exclusion for insureds or residents of the insureds' household applies to wrongful death judgments only when an insured seeks recovery, as a judgment creditor standing in the shoes of the insured, Mother's judgment would still be excluded under the policy.

Second, the clear, unambiguous policy language excludes coverage for bodily injury to the insureds and resident minors in their care, regardless of who seeks recovery. The policy excludes coverage for bodily injury based on the person injured—not the person seeking benefits under the policy. Here, C.W.H. was the person injured, and as a minor residing with and in the care of the insureds, damages arising from C.W.H.'s death are excluded from coverage under the policy. When the terms of an insurance policy are clear and unambiguous, the court must give effect to the parties' clear intentions and enforce the contract as made and may not "strain to create an ambiguity where, in common sense, there is not one." *O'Bryan v. Columbia Ins. Group*, 274 Kan. 572, 576, 56 P.3d 789 (2002).

The argument advanced by Mother and accepted by the district court is inconsistent with the plain and unambiguous policy language. The applicable policy exclusion turns not on who claims the benefit but rather on who suffered the bodily injury. While Mother's argument may carry some logical basis by preventing insureds from recovering for their own negligence but allowing third parties to recover from an insured's negligence, that result is inconsistent with the policy language. Regardless of who seeks the policy benefit, the policy clearly excludes from coverage damages

resulting from C.W.H.'s death because C.W.H. was residing in the insureds' home, under the insureds' care, and under the age of 21.

CONCLUSION

The Upland Mutual insurance policy plainly and unambiguously excludes Mother's wrongful death judgment from coverage, regardless of the beneficiary, and the district court therefore erred in interpreting the policy to permit coverage. While this court recognizes that P.B. has been found to have negligently caused C.W.H.'s death and sympathizes with Mother's unimaginable loss, the Upland Mutual policy simply does not provide coverage for her judgment. Accordingly, the district court's garnishment order for Mother's wrongful death judgment is reversed. On remand, the district court is directed to enter judgment for Upland Mutual on Mother's garnishment claim for her wrongful death judgment against P.B.

Reversed and remanded with directions.